UNITED STATES of America,
Plaintiff-Appellee,

v.

Robert SHEER, Gordon Foster and Thomas Jackson, Defendants-Appellants.

Nos. 12826–12828.

United States Court of Appeals
Seventh Circuit.

May 10, 1960.

Morris A. Shenker, Sidney M. Glazer, St. Louis Mo., Thomas O'Donnell, East St. Louis, Ill., for appellant.

C. M. Raemer, U. S. Atty., James B. Moses, Asst. U. S. Atty., East St. Louis, Ill., Sheldon Green, Asst. U. S. Atty., East St. Louis, Ill., for appellee.

Before DUFFY, SCHNACKENBERG and CASTLE, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Robert Sheer, Gordon Foster and Thomas Jackson, defendants, appeal from judgments of conviction in the district court entered on jury verdicts. Sheer was sentenced to concurrent five year terms of imprisonment under counts I, II, V and IX, to concurrent three year terms under counts IV and VI, and was fined $5,000 and costs under count V. Foster was sentenced to concurrent five year terms of imprisonment under counts VII and IX and was fined $5,000 and costs under count IX. Jackson was sentenced to one year imprisonment and costs under count VIII of the indictment, and under count IX his sentence was suspended and he was placed on probation.

As stated by defendants, the errors relied upon arise out of the overruling of each defendant's motion for judgment of acquittal at the close of the entire case, the improper admission of evidence on behalf of the government, the refusal to limit statements attributed to one defendant to the declarant, the refusal to grant a severance or a mistrial as to Foster and Sheer after admitting into evidence against Jackson a statement attributed to him, the refusal to allow de-

fendants to have certain internal revenue reports for the purpose of cross-examining government's agents, the refusal to allow defendants to have the grand jury testimony of certain witnesses for the purpose of cross-examination, the giving of erroneous instructions, the failure to give certain instructions offered by defendants, the excessive sentences, the failure of the court reporter to transcribe the entire proceedings, the improper selection of the grand jury and the overruling of motions to quash two search warrants and to suppress the evidence seized under those warrants.

The making of false statements in a matter within the jurisdiction of the United States Treasury Department was charged against Sheer in counts I, II, and IV, against Foster in count VII and against Jackson in count VIII. Sheer was therein charged with falsely stating on March 26, 1957, May 6, 1957 and July 3, 1956, that he had no employee or agent accepting wagers on his behalf. Foster was accused of falsely stating on May 6, 1957, to Special Agents conducting a criminal investigation that he never accepted wagers, and that he had no business interest in the Roberts Motel and Bar. Jackson was accused of making a statement on May 6, 1957, that he did not accept wagers. Count V charged that on May 29, 1957, Sheer attempted to evade the payment of wagering excise taxes due for April, 1957, by filing a wagering excise tax return listing the gross wagers accepted by him as $1,851.00 and the tax as $181.50, when he knew the "gross amount of wagers accepted by him" during that month was $2,365.00 and more and the tax due was $236.50 and more. Count VI charged Sheer with subscribing and filing a tax return application for registry-wagering, on July 3, 1956, falsely declaring under the penalties of perjury that it was true, correct and complete when it did not describe his place of business, and stated he did not engage any employee or agents in receiving wagers in his behalf.

Count IX charged that, on or about November 1, 1955, or prior thereto and continuing up to and including the indictment date (July 25, 1957), defendants did unlawfully conspire "to defraud the United States in its administration of the Internal Revenue Laws and to violate Sections 7201, 7203, 7206, 4411, 4412, 4901, 7262" of Title 26 and Section 1001 of Title 18 U.S.C. The indictment then alleged certain matters as a part of the conspiracy. It charged as overt acts each of the other counts of the indictment and three additional overt acts.

As above stated, counts II, VII and VIII charged, respectively that defendants Sheer, Foster and Jackson knowingly made a false and fraudulent statement of a material fact to Special Agents of the Internal Revenue Service on May 6, 1957.

The statute alleged to be violated, 18 U.S.C.A. § 1001, provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Upon the trial, all of the principal government witnesses were agents of the government. After the direct examination of each of these witnesses, defendants demanded the right to inspect the reports which the agents had made. Defendants were given statements of the agents which were made contemporaneously with the events reported [1] but, under the court's ruling they were denied other statements. It was the government's position that "we will supply memoranda taken down in questioning

---

1. However, a statement by Agent Glen Johnson was not produced because it had been lost.

defendants at the time of the questioning that took place but we will not show the Internal Revenue *reports* relating to such things or such interviews with the defendants other than verbatim statements reported". (Emphasis supplied.) The court's view was that the defendants "will be entitled to copies of written statements made contemporaneously with the interviews".

After Agent William Edwards testified as to a raid at the Roberts Motel, defendants made a request for his report of what took place during the raid, which request was denied. Agent Donald Yerly testified in substance that he inspected the building at 929½ Missouri Avenue on May 7, 1957, and that he observed smoke in room 5 as well as ashes in a wastebasket which was warm. Across the street was a car in which he had seen Sheer riding. On the same day, after he returned to the office, Yerly made a memorandum report of what he had seen. A request by defendants for production of this report was denied by the court, without stating the ground for its ruling.[2]

█ The demand for these reports was made for the purpose of impeaching government agents Edwards and Yerly who had completed their testimony on direct examination. Palermo v. United States, 360 U.S. 343, 345, 79 S.Ct. 1217, 3 L.Ed.2d 1287. Defendants rely upon the Jencks Act, 18 U.S.C.A. § 3500, which provides:

"§ 3500. Demands for production of statements and reports of witnesses

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. * * *

* * * * * *

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

We have held that this Act applies to government agents who testify for the prosecution in federal criminal cases. United States v. Berry, 7 Cir., 1960, 277 F.2d 826.

█ We find that the term "statement" as used in the Act applies to the reports made by the agents in this case. A report is defined as "a statement in writing of proceedings and facts exhibited by an officer to his superiors". Webster's Dictionary.

---

2. While it is not clear from the record that the district court denied production of the reports of Edwards and Yerly because they were not made contemporaneously with the events recounted therein, and while the evidence indicates rather strongly that these reports were made so soon after those events that they were as a matter of fact contemporaneous therewith, we are for the purpose of this case accepting the government's contention that these statements were "not made contemporaneously with the interview on the subject matter" thereof.

Neither the wording of the Act nor its legislative history indicates any intention of protecting government agents from impeachment when they become witnesses for the government at a trial. If, subject to the safeguards set forth in the Act, the defense is permitted to test the credibility of a government agent when he appears as a witness, the purpose of the law in securing a fair trial is more nearly attained. If an agent's written reports as to matters about which he has testified on direct examination are at variance with his testimony, a well-established ground for impeachment exists. 98 C.J.S. Witnesses § 482, p. 365. Of course, it is necessary that a foundation for impeachment first be laid by the cross-examiner. 98 C.J.S. Witnesses § 599, p. 589. Accordingly, in the case at bar, after Edwards and Yerly, two of the principal witnesses for the government, had each completed his direct testimony, a demand was made by defense counsel for production of their reports but an objection thereto was sustained by the district court. As to the contention of the government, which we are assuming has a factual basis in the record (see footnote 2, ante), that these reports were not made contemporaneously with the events therein referred to, we hold that the *time* of their making was not germane to their use as a basis for impeachment. They were statements made by the witnesses Yerly and Edwards as referred to in § 3500(e) (1). They were *not* statements such as those referred to in § 3500(e) (2).

The government contends that defendants are in no position to object to the court's rulings in this respect because they did not move to have the questioned statements marked as exhibits for consideration on appeal. They add that "This should have been done for if the defense is not prejudiced by the withholding the error is harmless." However, it affirmatively appears in the record that defense counsel inquired as to whether the reports were present in the courtroom or available and the response was in the negative. Upon oral argument it was stated to this court, and not denied, that these documents were not physically in the courtroom at the time of the proceedings referred to. Just how the defense attorney could have had the absent statements marked as exhibits by the court reporter does not appear.

Substantial error was committed in the nonproduction of the reports of Edwards and Yerly for use by defendants in their defense in the district court. It is not proper for this court to determine whether defendants were prejudiced by failure to make available to them the prior statements of Yerly and Edwards, any more than it would be proper for the trial court to determine whether a prior statement of a witness should be turned over to defense counsel on the basis of whether the statement is inconsistent with the witness' testimony in open court. Bergman v. United States, 6 Cir., 253 F.2d 933, 936. A reversal of the judgment is required. A remandment for a new trial will be ordered.

In view of that disposition of the appeal, is becomes unnecessary to consider the other grounds urged by defendants in this court.

Reversed and remanded for a new trial.