## CLANCY ET AL. *v.* UNITED STATES.

No. 88. Argued January 10, 1961.—Decided February 27, 1961.

*Paul P. Waller, Jr.* and *John F. O'Connell* argued the cause and filed a brief for petitioners.

*Daniel M. Friedman* argued the cause for the United States. With him on the briefs were *Solicitor General Rankin, Assistant Attorney General Wilkey, Robert S. Erdahl, Philip R. Monahan, Beatrice Rosenberg* and *Jerome M. Feit.*

Mr. Justice Douglas delivered the opinion of the Court.

This case presents an important question under 71 Stat. 595, 18 U. S. C. § 3500, the statute sometimes referred to as the Jencks Act, as it deals with the problems presented in our decision by that name. *Jencks v. United States,* 353 U. S. 657. Petitioners were charged with making false statements (18 U. S. C. § 1001), with attempting to evade the wagering excise tax (26 U. S. C. § 7201), and with conspiring to defraud the United States of internal revenue taxes (18 U. S. C. § 371). They were found guilty and the judgments of conviction were affirmed. 276 F. 2d 617. The case is here on a writ of certiorari. 363 U. S. 836.

At the trial Minton, a government agent, testified concerning an interview with petitioner, Kastner, at which he was present. Minton testified "I did not take any notes at the time, but afterwards I returned to the office and made a memorandum of the interview." Counsel for Kastner asked the court for the production of that memorandum pursuant to the Jencks Act.[1]

---

[1] 18 U. S. C. § 3500 provides in relevant part:

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

. . . . .

"(e) The term 'statement', as used in subsections (b), (c), and

Other government witnesses testified to conversations they had had with Clancy, Kastner, and a third partner in petitioners' wagering business. One of the witnesses, Agent Buescher, testified he tad taken no notes during these interviews, but had "compiled a memorandum" from notes taken at the time of the interview by the second witness, Agent Mochel. Both Buescher and Mochel testified that they had signed the later memoranda of the conversations. Counsel for petitioners requested production of the memoranda, and the requests were refused.

The trial court, though directing delivery to the defense of notes made by the witnesses at the time of the interviews, refused the requests for the memoranda, saying that written statements were not covered by the Jencks Act unless they were made "contemporaneously" with the interview. The Government now concedes that this was an erroneous ruling, as indeed it was. Each of these statements related "to the subject matter as to which the witness has testified." [2] Each was a "statement" as that word is defined in the Act.[3] The requirement that it be contemporaneous applies only to "a substantially verbatim recital of an oral statement" made to a government agent.[4] By the terms of the Act,[5] "a written statement made by said witness and signed or otherwise adopted or

---

(d) of this section in relation to any witness called by the United States, means—

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

[2] 18 U. S. C. § 3500 (b), *supra*, note 1.

[3] 18 U. S. C. § 3500 (e), *supra*, note 1.

[4] 18 U. S. C. § 3500 (e) (2), *supra*, note 1.

[5] 18 U. S. C. § 3500 (e) (1), *supra*, note 1.

approved by him" is also included. These statements fell in that category and should have been produced. *Campbell* v. *United States, ante,* p. 85. And see *United States* v. *Sheer,* 278 F. 2d 65, 67–68. As the Senate Report on the bill that became the Jencks Act states: [6]

> "The committee believes that legislation would clearly be unconstitutional if it sought to restrict due process. On the contrary, the proposed legislation, as reported, reaffirms the decision of the Supreme Court in its holding that a defendant on trial in a criminal prosecution is entitled to reports and statements in possession of the Government touching the events and activities as to which a Government witness has testified at the trial.
>
> "The purpose of the proposed legislation is to establish a procedural device that will provide such a defendant with authenticated statements and reports of Government witnesses which relate directly upon his testimony."

The Government, however, contends that as to Agent Minton the error was harmless. It also asserts—though the record is silent and counsel for petitioners deny it—that verbatim carbon copies of the reports of Agents Buescher and Mochel were delivered to the defense at the trial. But since its version of what transpired is contested, the Government urges that the most we do is to remand the case to the District Court to determine whether verbatim copies of the reports were delivered to the defense at the trial. If they were so delivered, the Government argues, the court's denial of their production was harmless error.

We do not follow that suggestion. We deal with the record as we find it, which gives no support to the Gov-

---

[6] S. Rep. No. 569, 85th Cong., 1st Sess., p. 2.

ernment's assertion that verbatim reports were delivered to the defense. Moreover, the Government's assertion is not a positive statement of the prosecution. Those who present the case here say with candor that they speak only "according to our information," which admittedly falls short of an assertion that the copies were delivered to the defense at the trial. Since the defense earnestly denies the statement, we can only conclude that on the record before us petitioners were denied an inspection of the documents to which they were entitled.

We put to one side *Rosenberg* v. *United States,* 360 U. S. 367, where a failure to produce a document was considered to be harmless error under the particular circumstances of that case. We do not reach the harmless error point because, if applicable, it is relevant only to the report of one of the agents, not to those of the other two. Since the production of at least some of the statements withheld was a right of the defense, it is not for us to speculate whether they could have been utilized effectively. As we said in *Jencks* v. *United States, supra,* 667:

"Flat contradiction between the witness' testimony and the version of the events given in his report is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process of testing the credibility of a witness' trial testimony."

Accordingly we conclude that at least as respects some of these statements reversible error was committed and that petitioners are entitled to a new trial. There are other questions raised that we do not reach, as we have no way of knowing whether they will arise on a new trial.

*Reversed.*

Mr. Justice Clark, with whom Mr. Justice Frank-
furter and Mr. Justice Harlan join, dissenting.

Petitioners were convicted of tax evasion and conspiracy
to defraud the United States in the operation of a horse
race booking enterprise. During the trial the defense
asked for the production, under the Jencks Act, of certain
signed memoranda of interviews of petitioners by govern-
ment agents. The request was refused at the time. The
Government, in its brief filed November 14, 1960, agrees
that this refusal was error. It insists, however, that
verbatim copies of the memoranda were delivered to the
defense attorneys at a later stage in the trial during the
cross-examination of one of the Government's agents. It
requested, "unless petitioners agree with the [Govern-
ment's] version of the facts," a remand of the case in
order that the trial court might determine this sole
question.

The attorneys for the petitioners made no reply to this
claim of the Government until Thursday, January 5, 1961.
In their reply brief on that date they categorically denied
that verbatim copies had been delivered. This statement
was later supported by affidavit of the attorneys.

The case came on for argument on Tuesday, January 10.
The Government advised that the government employees
involved in the case had not been available until the
previous day and hence counter affidavits had not been
obtainable. However, it offered to produce affidavits of
the agents, as well as the Assistant United States Attorney
who tried the case, that would support its claim. In
explaining the situation that confronted it, the govern-
ment counsel stated that he had personally talked by
telephone to the United States Attorney after petitioners'
brief was filed. This conversation, he said, together with
that had with the Assistant United States Attorney who
tried the case, confirmed the earlier conclusion that the

Government's contention was correct. However, since both the United States Attorney and his assistant made reference to the Government's witness (Agent Mochel, who had written the memoranda in controversy), government counsel also made every effort to reach Mochel and was successful on January 9. Mochel advised that when he was on the witness stand during the trial he had the carbon copies of his memoranda in his pocket and that upon request he took them out and handed them either (1) directly to petitioners' counsel, or (2) to the Assistant United States Attorney trying the case, who passed them on to petitioners' counsel in the courtroom. This was verified by the Assistant United States Attorney who, however, candidly admitted that he was somewhat "hazy" as to what documents were actually passed by him to counsel. The record indicates that he had made available to petitioners' counsel a large number of documents, including the original notes of the agents. The Government insists that this factual situation creates "sufficient doubt" to require a hearing by the trial judge and a determination of whether or not the memoranda in controversy were actually delivered to petitioners' counsel.

This Court, of course, cannot determine these conflicting factual assertions on an affidavit basis. In view of the lateness of petitioners' denial, however, the Government was not afforded sufficient time to supplement the record on the point. The original record lodged here indicates that Agent Mochel, in his testimony, made reference to "memoranda" and, in context, the indications are that the "memoranda" in controversy were at that time in the hands of petitioners' counsel, who were questioning him. Under these circumstances it appears to me that justice does require that we remand the case solely for determination of this point. If the verbatim copies were not delivered, no harm will have been done, for the trial court could then set aside the judgments of conviction

and grant a new trial.  On the other hand, if the copies were actually delivered there could have been no prejudicial error and the judgments of conviction should stand.

The Court, however, refuses to order this done.  It reverses the case on this technicality, regardless of the fact that the Government has persuasive evidence that petitioners' counsel actually had access to the very documents on which its reversal is based.  The Court indicates that the Government's claim is outside the record.  However, if the memoranda were in fact made available, as the Government claims, they were delivered during the trial and the record does have fleeting references that support such a conclusion.  It would be a simple matter for these references to be made more complete at a hearing.  In my view it is only fair that the Government should be given this opportunity.  Moreover, I note that the Court has granted just such relief in many cases.  See *Campbell* v. *United States, ante,* p. 85 (1961); *United States* v. *Shotwell Mfg. Co.,* 355 U. S. 233 (1957); *Communist Party* v. *Subversive Activities Control Board,* 351 U. S. 115 (1956).