**Henry A. MOORE, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18121.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 19, 1963.

Decided July 8, 1965.

Petition for Rehearing En Banc Denied
Sept. 23, 1965.

Wright, Circuit Judge, dissented.

See also 117 U.S.App.D.C. 254, 328
F.2d 555.

Mr. J. Albert Woll, Washington, D. C.
(appointed by this court) for appellant.

Mr. John A. Terry, Asst. U. S. Atty.,
with whom Messrs. David C. Acheson, U.
S. Atty., and Frank Q. Nebeker and Har-
old H. Titus, Jr., Asst. U. S. Attys., were
on the brief, for appellee.

Before BASTIAN, Senior Circuit Judge,
and BURGER and WRIGHT, Circuit Judg-
es.

PER CURIAM.

Moore appeals from conviction of rob-
bery. The evidence developed at trial
disclosed that one Talley, the complain-
ant, had been in a certain restaurant for
about an hour and a half one evening
during which time he had bought drinks
for several persons, revealing he had a
sizeable amount of money on his person.
Robertson, the manager of the restau-
rant, observed the Appellant to enter and
leave the restaurant three or four times
in this interval, "nos[ing] around the
table where Mr. Talley was sitting * * *
and looking at Mr. Talley." Close to clos-
ing time Robertson saw that Talley was
beginning to doze off and advised him,
"don't leave the restaurant. Stay there
until I get through counting the money
and I would see he got home." At that
time the Appellant was standing next to
Talley, who was seated. About five min-
utes later while Robertson was counting
the night's receipts,

> one customer hollered [to Robert-
> son], he is taking him out. So when
> I looked up, the defendant there had
> him by the arm taking him out the
> door.

Robertson jammed his money into a cigar
box and ran outside to see Talley on the
ground and the Appellant fleeing up the
street. Robertson later picked Appellant
out of a police lineup. His identification
was confirmed by that of the witness
Saunders, a waitress, who accompanied
Robertson in the abortive attempt to help
Talley and who had known the Appellant
for 15 or 16 years, and had seen him in
the restaurant that night. Mrs. Saun-
ders was so positive of Appellant's iden-
tity that she proceeded directly from the
scene of the crime to inform his mother
of the events.

In these circumstances any error in production of certain statements under the Jencks Act, 18 U.S.C. § 3500 (1958), was harmless error.

Affirmed.

1. 18 U.S.C. § 3500.

2. The colloquies concerning the requests for the Jencks Act statements follow: CROSS-EXAMINATION [of Ken Robertson] BY MR. JONES:

Q Did you talk to the police about this case, sir?
A Yes, sir, I did.
Q Did you make a statement to them?
A Yes, I did.
Q Was that statement reduced to writing?
A Yes, I think so.

MR. JONES: May we approach the bench, Your Honor?

THE COURT: Do you have a statement there, Mr. Titus?

MR. TITUS: Your Honor, I don't know what he has in mind. May we approach the bench?

THE COURT: Yes, sir.

(Bench Conference.)

MR. TITUS: I will see if I have any statement. I will be glad to give it to him, Your Honor, if I have one. I don't know which one the witness means. (Mr. Titus checked the file.)

MR. JONES: The witness said he doesn't know. I am just laying a foundation as to whether a statement was made or not and reduced to writing. I am not entitled to it before trial and that is why I am asking for it at this time.

MR. TITUS: Your Honor, I don't have any statement at all in my file. I will ask the police officer if he has any.

THE COURT: If he has, we will get it for you, Mr. Jones. That is all we can do. Will you do that, Mr. Titus?

MR. TITUS: I will ask the police officer. Do you want me to do it now?

THE COURT: Yes, sir.

(Mr. Titus left the court room.)

MR. TITUS: Your Honor, the police officer has no statement. This could have been something that was signed by him, a witness slip or something that he is confused about.

THE COURT: You have nothing?

MR. TITUS: No. I merely have the Grand Jury statement which I don't think comes under the Jencks Rule.

MR. JONES: For the record, may I make a motion to strike the direct ex-

WRIGHT, Circuit Judge (dissenting).

Appellant's trial counsel's timely motion for production of Jencks Act [1] statements was denied on the representation that there were none.[2] After two re-

amination of the witness on the ground that the statement has not been produced if it is in existence?

THE COURT: I don't know what you mean, sir. I do not think that would be a basis to strike the testimony. Mr. Titus has gone through his file and he has no statement. He has asked the police officers and they have no statement.

MR. JONES: This is a motion for the record.

THE COURT: I don't understand you, sir.

MR. JONES: Under Title 18, Section 35 of the Jencks Act.

THE COURT: I am familiar with that, sir.

MR. JONES: I believe that if the statement is not produced and it is in existence and I assume that it isn't, but I must object and—

THE COURT: Let me say this to you, sir: I have known Mr. Titus for many years and if there was a statement he would produce it. I will say this for him and he can speak for himself but if he later finds there is a statement, you will certainly be given it.

MR. JONES: Very well, Your Honor.

*     *     *     *     *

CROSS-EXAMINATION [of Vernelle Saunders]

BY MR. JONES:

*     *     *     *     *

Q Now, did you talk about this case to the police?
A Yes. I did.
Q And did you give the police a statement?
Q Yes, I did.
Q Was that statement reduced to writing or did someone type it up while you were giving it, someone in the Police Department?
A I don't know.
Q You are not certain?
A No.

THE COURT: Do you have any such statement, Mr. Titus?

MR. TITUS: I think we are in the same position, Your Honor.

THE COURT: You have no statement?

MR. TITUS: No.

mands, the Government now concedes that there were three. The Government argues nevertheless that a new trial is not necessary here because the failure to produce the Jencks Act statements was not prejudicial to the appellant.

This is a robbery case based entirely on circumstantial evidence. The victim, one Talley, could not identify his assailant, and there were no eyewitnesses. The principal witness for the Government, one Ken Robertson, testified that he saw the victim walking out of Kent's Restaurant with the appellant shortly before the victim was assaulted. Robertson further testified that when he came to the victim's assistance, the victim said, "Ken, he got me."

One of the Jencks Act documents produced on remand was a statement taken from Robertson in which Robertson quotes the victim as saying "they" got him. Another of the Jencks Act documents produced on remand showed that three persons participated in the assault on Talley. Robertson's statement also indicates that he ran after the appellant, but the appellant was "way up the street in the middle of the block." On trial, Robertson estimated that the distance between him and appellant was from the witness chair to the defense table. In addition, on remand it was disclosed that the principal Government witness had, on trial, testified falsely under oath that his name was Ken Robertson, thus concealing his real name, Robert Butts.

This, therefore, is not a case in which "it would deny reason to entertain the belief that defendant could have been prejudiced"[3] by the failure of the Government to produce the Jencks Act statements. Rather, it appears, to me at least, that enough discrepancy between Robertson's testimony on trial and the Jencks Act statements has been shown that "it

is not for us to speculate whether they could have been utilized effectively."[4]

Perhaps more important here than the fact that the appellant may have been prejudiced by the failure of the Government to produce the statements is the length to which counsel for the appellant had to go to unearth the issue. The production of Jencks Act statements should be as nearly automatic as possible if the *Jencks*[5] doctrine is to serve its salutary purpose. There are not many counsel, appointed or retained, with the perseverance shown by appointed counsel in this case.

I respectfully dissent.

3. Rosenberg v. United States, 360 U.S. 367, 371, 79 S.Ct. 1231, 1234, 3 L.Ed. 2d 1304 (1959).

4. Clancy v. United States, 365 U.S. 312, 316, 81 S.Ct. 645, 648, 5 L.Ed.2d 574 (1961).

5. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957).