UNITED STATES of America, Plaintiff-Appellee,

v.

Manuel ZURITA, Defendant-Appellant.

No. 15620.

United States Court of Appeals Seventh Circuit.

Nov. 9, 1966.

Rehearing Denied Dec. 20, 1966.

Rehearing Denied Dec. 20, 1966. (En Banc).

Max Cohen, Gary, Ind., for appellant.

Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind., Richard F. James, Asst. U. S. Atty., Hammond, Ind., for appellee.

Before HASTINGS, Chief Judge, and KILEY and CUMMINGS, Circuit Judges.

HASTINGS, Chief Judge.

Appellant, Manuel Zurita, was found guilty by a jury of violation of 18 U.S. C.A. § 2113(d) [1], bank robbery by the use of a dangerous weapon. Judgment of conviction was entered by the trial court, and Zurita was sentenced to serve a period not to exceed twenty-four years.

On appeal, it is asserted that the trial court erred in denying Zurita's motion to produce a composite picture drawn by an FBI agent during an interview with two principal Government witnesses and that the trial court further erred in permitting the Government to cross-examine, on a collateral issue and over objection, one of Zurita's witnesses, his wife.

On the evening of November 19, 1961, three men entered the residence of the branch manager of the Gary Trust and Savings Bank, Gary, Indiana, by means of a subterfuge. During the night, they held the manager and his wife hostage at gunpoint. The next morning, two of the men accompanied the manager to the bank and robbed it while the other man remained with the manager's wife.

During the investigation of the robbery, the bank manager and his wife aided an FBI agent as he drew a composite picture of the robbers by means of their descriptions and adoption of features in photographs of other men. The bank manager's wife testified:

"We had described the fellows as best we could—not together, individually—and then we looked at various pictures and we chose one, and perhaps it had a nose like one of the men, so we would mention that. We did this separately, though, we didn't do this together. Then we would choose another one that perhaps had eyes that looked, or eyebrows that were the same shape; in this way he was able to draw some kind of a picture."

During Zurita's trial, the bank manager and his wife identified Zurita in open court as one of the robbers. Another defendant, who was indicted with Zurita, but who entered a guilty plea prior to Zurita's trial, also identified Zurita as an armed participant in the robbery.

The composite drawing of the FBI agent was not introduced in evidence by the Government. Zurita, arguing that the drawing was a statement of the bank manager and his wife, requested the Government to produce it under 18 U.S.C.A. § 3500. This section, which was intended for impeachment purposes, in essence provides that in criminal prosecutions statements of a Government witness in the possession of the Government shall be made available to the defense, insofar as they relate to the testimony of the Government witness. The trial court,

1. "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section [bank robbery or attempted bank robbery], assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both." 18 U.S.C.A. § 2113(d).

however, ruled that the drawing was inadmissible as not being within the definition of statements as found in 18 U.S.C.A. § 3500(e).

18 U.S.C.A. § 3500(e) defines "statement" as:

"(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

"(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement."

The question of the producibility of drawings under § 3500 is novel, although a case in which there is some similarity of facts is Ahlstedt v. United States, 5 Cir., 325 F.2d 257 (1963). There the defense attempted to have the Government produce numerous photographs which were shown to Government agents in an unsuccessful attempt to identify the participants in a robbery. It was held that § 3500 did not apply to miscellaneous photographs.[2]

There can be no question that, literally, a drawing is not a written statement and is not a recording "which is a substantially verbatim recital of an oral statement." But this does not resolve the question whether, notwithstanding a literal interpretation of the statutory language, a drawing may be the kind of information Congress intended to have produced under § 3500.

There is nothing in the cited cases or legislative history to indicate that § 3500 was ever conceived to reach drawings. The legislative history and Supreme Court interpretation of § 3500 disclose that Congress and the Supreme Court have considered § 3500 only in relation to verbal communications producible as such.

In Palermo v. United States, 360 U.S. 343, 355, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), the Supreme Court held that a six hundred word memorandum of a Government agent, selecting parts of a three and one-half hour interrogation of a Government witness, was not a statement within the reach of 18 U.S.C.A. § 3500.

Palermo was the Supreme Court's first interpretation of § 3500, the so-called "Jencks Act", legislation which was prompted by the Supreme Court's decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). The Court in Palermo had occasion to explicate the construction of the new statute at length. Reviewing the Congressional purpose and legislative history, the Court said:

"It is clear that Congress was concerned that only those statements which could properly be called the witness' own words should be made available to the defense for purposes of impeachment. It was important that the statement could fairly be deemed to reflect fully and without distortion what had been said to the government agent. Distortion can be a product of selectivity as well as the conscious or inadvertent infusion of the recorder's opinions or impressions. It is clear from the continuous congressional emphasis on 'substantially verbatim recital,' and 'continuous, narrative statements made by the witness recorded verbatim, or nearly so * * *,' * * * that the legislation was designed to eliminate the danger of distortion and misrepresentation inherent in a report which merely selects portions, albeit accurately, from a lengthy oral recital. * * *. We think it consistent with this legislative history, and with the generally restrictive terms of the statutory provision, to require that summaries of an oral statement which evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes, and hence rest

2. See also United States v. Sopher, 7 Cir., 362 F.2d 523 (1966), wherein a trans-

cript and tape recording were held not producible under § 3500.

on the memory of the agent, are not to be produced. *Neither, of course, are statements which contain the agent's interpretations or impressions."* Palermo, supra, 360 U.S. at 352–353, 79 S.Ct. at 1224–1225. [Emphasis added.]

Section 3500(e) (1) is limited expressly to written statements, while § 3500(e) (2) is directed to recordings or reproductions of statements and not to representations of statements. *Palermo* teaches that the statutory language is not to be given a broad interpretation, for summaries by a Government agent, which may quite accurately reveal the substance or meaning of a Government witness' statements, are not producible. Thus, even assuming a drawing fully faithful to a description, it is nonetheless not a recording or transcription of an oral statement, for it does not, as a summary does not, reproduce the statement. Rather, it merely contains and represents "the agent's interpretations or impressions."

■ Although the aim of the statute is the production of only those statements which fully reveal what was said to a Government agent, the means the statute employs to insure full revelation is recordation or reproduction. The test, therefore, is not identity of meaning or accuracy of representation, but substantial fidelity of recordation or reproduction. See Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963).

A picture may be worth a thousand words, but it does not record those words or reproduce them or, indeed, even indicate what they are. Drawing is selective and interpretive, and an artist, even when attempting to copy or to work from another's direction, is not merely a stenographer with a peculiar system of shorthand. His work contains and reveals his impressions from information given to him.

While a composite drawing made from photographs and descriptions may be some evidence of words, it cannot be considered a recordation or reproduction of words. We do not doubt that such a drawing may, in certain circumstances, be an even better means of identification than verbal descriptions of witnesses. The question here, however, is not the best means of identification, but the meaning and reach of § 3500(e).

■■ Although it may be reasonable to conclude that a drawing such as that in issue should be subject to production, particularly if approved by a witness, the ordinary use of the words of § 3500, and the emphasis of its coverage, in view of the legislative history [3] and judicial interpretation, simply do not include drawings. If this is a defect or omission in the statutory language, the remedy is not with the court to expand the usual meaning of the words of the statute, but with Congress. We hold the composite drawing is not within the meaning of and is not producible under § 3500. The trial court did not err in so ruling.

A second ground of error is urged. The Government attorney was permitted, over objection and on cross-examination, to ask Zurita's wife whether Zurita owned a 1954 Mercury, whether the Mercury was traded in on a 1960 Cadillac, and whether prior to November 19, 1961, Zurita had a 1954 Mercury at his disposal. All of these questions were answered negatively. While the questions were apparently asked for impeachment purposes, the Government failed to produce evidence as to Zurita's ownership or possession of any car. It is asserted that the absence of impeaching evidence made the questions improper and that the effect of putting the questions prejudiced Zurita.

3. See Appendices A and B to the opinion of the Court in Palermo v. United States, 360 U.S. 343, at 356–360, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959). For the full legislative history of the Act, see 2 U.S.Code Congressional and Administrative News, p. 1861 (1957).

Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A. provides that:

"Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

Respecting harmless error, the Supreme Court has said:

"And the question is, not were they [the jury] right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. * * *.

\* \* \* \* \* \*

" \* \* \*. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1247–1248, 90 L. Ed. 1557 (1946).

This standard has recently been succinctly reformulated by a distinguished jurist:

"An error is prejudicial, not harmless, if there is credible risk that it influenced the trier of fact to arrive at one finding when there was evidence in the record to support another." Traynor, 29 U. of Chi.L.Rev. 223, 227 (1962).

■ Under this standard, we hold that error, if any, involved in permitting the Government to cross-examine Zurita's wife as it did was harmless.

The evidence of Zurita's guilt as reflected in the testimony of the bank branch manager, his wife and one of Zurita's accomplices was overwhelming. Substantial justice has been done.

Max Cohen, a reputable member of the Gary, Indiana bar, represented appellant in this appeal under appointment by this court pursuant to the Criminal Justice Act of 1964. We commend Mr. Cohen for his able and effective services in this case.

The judgment of conviction is affirmed.

Affirmed.

KILEY, Circuit Judge (dissenting).

I respectfully dissent because I think the record shows Zurita did not have a fair trial.

It is my view that Zurita was entitled to have the sketch made by the agent from the relatively fresh impressions of the identifying witnesses produced as a "written statement" within the meaning of 18 U.S.C. § 3500(e) (1) (1964).

There is a growing, and apparently beneficial, use of sketches drawn of suspects in criminal investigations by artistic government agents from the statements of witnesses. Contemporaneously there is the growing concern of courts for a dispassionate search for truth in protection of the right to a fair trial of defendants in criminal cases, which overrides a rigid adherence to the adversary method of developing the truth. This concern, shown in the concurring opinion in Palermo v. United States, 360 U.S. 343, 360, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959), and later Supreme Court cases, points to the necessity of producing the sketches for cross-examination purposes where witnesses have adopted the sketch as an accurate portrayal of the defendant. The choice of recording an interview visually rather than verbally does not reduce the reliability of that interview for impeachment purposes, where the witness has adopted the sketch and subsequently identifies the suspect at the trial. These considerations, in my opinion, direct a reasonably broad construction of section 3500(e) (1), so as not to preclude production of the sketch in this case. These facts and the novelty of the question presented make the majority decision an important, cf. Palermo v. United States, 360 U.S. at 349, 79 S.Ct. 1217, and I think erroneous precedent in the area of criminal procedure.

The question whether the drawing is a "written statement" under section 3500(e) (1) is one of the "gaps to be filled" by judicial construction. Palermo v. United States, 360 U.S. at 349, 79 S.Ct. 1217. In *Palermo* the Court discussed section 3500(e) (1) briefly:

Since the statutory procedures are exclusive they constitute the rule of law governing the production of the statement at issue in this case and it becomes necessary to determine the scope and meaning of the statutory definition of "statement" contained in (e). Clause (1) of (e) permits the production of "a written statement made by said witness and signed or otherwise adopted or approved by him. \* \* \*." Although some situations may arise, creating peripheral problems of construction, its import is clear. Id. at 351, 79 S.Ct. at 1224.

The rest of the *Palermo* opinion dealing with subsection (e), including the portion quoted by the majority in this case, was devoted to clause (2), which deals with substantially verbatim reproductions of the statements of witnesses and does not require a signature or adoption by the person interviewed.

In Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963) *(Campbell II)*, the trial court had found that a government agent had orally repeated the substance of the witness's story from memory and notes he had taken only to refresh his recollection. He later transcribed the notes into an "Interview Report" and then destroyed the notes. The Supreme Court held that the trial court's finding of adoption was not clearly erroneous and that the Interview Report, as a copy of the notes, was producible under subsection (e) (1), because the adoption of the oral presentation constituted "adoption of a written statement made by him, namely the notes." Id. at 492, 83 S.Ct. at 1360. The Supreme Court specifically refused to consider the producibility of the Report under (e) (2), which, it should be noted, requires that the recording of a statement be "substantially verbatim." The Court said "it is settled, of course, that a written statement, to be producible under § 3500(e) (1), need not be \* \* \* a substantially verbatim recording of a prior oral statement." Campbell v. United States, 373 U.S. 487, 492, n. 6, 83 S.Ct. 1356, 1360 (1963) *(Campbell II)*; see United States v. McCarthy, 301 F.2d 796 (3d Cir. 1962).

It is my view that this decision cannot rest on *Palermo* because the substantially verbatim requirement of subsection (e) (2) involved there does not apply to production sought under (e) (1) as in this case. Although not overruling *Palermo's* strict construction of (e) (2), later decisions of the Supreme Court have interpreted (e) (1) in the light of the broad purpose of section 3500, i. e., "the fair and just administration of criminal justice, a goal of which the judiciary is the special guardian." Campbell v. United States, 365 U.S. 85, 92, 81 S.Ct. 421, 425, 5 L.Ed.2d 428 (1961) *(Campbell I)*. In Clancy v. United States, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961), the Court quoted with approval the Senate Report on the then pending bill which recognized the constitutional implications of any limitation upon a defendant's access to authenticated statements directly bearing upon the testimony of a government witness. Id. at 315, 81 S.Ct. 645. See also Palermo v. United States, 360 U.S. at 360, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (concurring opinion).

The considerations which prompted the *Palermo* Court to construe the "substantially verbatim" requirement of subsection (e) (2) strictly are not relevant to (e) (1). In so far as section 3500 may be considered a limitation of the decision in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), the rationale for the statute was that a defendant should not, in the interests of national security and the orderly enforcement of law, have the right to inspect all government files in his case. See S.Rep. No. 981, 85th Cong., 1st Sess. (1957) in 1957—2 U.S.Code Cong. & Admin. News,

**480**

p. 1861. This rationale is not relevant to Zurita's request for production under subsection (e) (1) because production of the sketch would not have interfered with the government's case or required the disclosure of confidential information. There is, on the other hand, the probability that he was, with respect to his constitutional right of cross-examination and confrontation, unduly restricted by the too-rigid construction of (e) (1).

The prejudice inherent in such strict construction is illustrated here, where the government witnesses were interviewed in 1961, shortly after the robbery, and gave the statements from which the composite picture was drawn. It was not until 1965, the time of the trial, that there was any face-to-face confrontation and eyewitness identification. The only other identification of Zurita was made by one of the codefendants.

Ahlstedt v. United States, 325 F.2d 257 (5th Cir. 1963), relied upon by the majority, does not stand in the way of my view of the question. The holding there was that the motion for production of all the photographs used by any government agency in the investigation— none of which was identified by the witnesses and some of which had already been voluntarily produced by government counsel—was neither timely nor appropriate. This was a "fishing expedition" and granting the motion would clearly have contravened the express statutory purpose of section 3500. S.Rep. No. 981, 85th Cong., 1st Sess. (1957) in 1957—2 U.S.Code Cong. & Admin. News, pp. 1861, 1863.

The district court here refused to order production of the sketch because it was not a written statement. The court therefore did not determine whether the witnesses had adopted the sketch as representing their impressions truthfully. The evidence showed they did adopt the sketch. The artistic agent did not testify and there is no denial of the testimony of the identifying witnesses that the sketch looked very much like Zurita, substantially what the "robber looked like,"

although the testimony was somewhat hedged the next day. It is clear to me that the sketch was an important instrument of cross-examination and failure to require its production was prejudicial error.

I would reverse and remand for a new trial.