No. 73–996. ERCKMAN v. UNITED STATES. C. A. 7th Cir. Certiorari denied.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins. dissenting.

Petitioner was convicted after a jury trial of three counts of willfully filing false income tax returns in violation of § 7206 (1) of the Internal Revenue Code, 26 U. S. C. § 7206 (1). An important prosecution witness at trial was Internal Revenue Special Agent Eugene Konrad, who had interviewed petitioner about his tax returns before the prosecution was instituted, and whose

testimony played a major role in establishing the willful-ness of petitioner's acts. To facilitate his cross-examination of Konrad, petitioner moved under the Jencks Act, 18 U. S. C. § 3500, for production of Konrad's report to the Chief of the Intelligence Division of the Internal Revenue Service in Chicago concerning the interview. Following the *in camera* examination mandated by § 3500 (c), the District Court refused to order production of the report on the ground that "there is no material . . . in the special agent's report . . . that is reasonably necessary for the defendant's use in making adequate trial preparation."

The Court of Appeals correctly held that "this was an improper test" to apply to determine whether a statement must be produced under § 3500. The court, following its recent decision in *United States* v. *Cleveland,* 477 F. 2d 310, 315–316 (CA7 1973), found that the agent's report was a "statement" within the meaning of the Jencks Act, § 3500 (e), see also *Clancy* v. *United States,* 365 U. S. 312 (1961), and that it therefore must be produced if it "relates to the subject matter as to which the witness has testified." § 3500 (b). Since the Court of Appeals found that "some of it clearly relates to the subject matter of his testimony," it held that Konrad's report should have been produced for the petitioner's use in cross-examination.

But the Court of Appeals then went on to conclude, on the basis of its own examination of the report and without permitting petitioner's counsel to see it, that "the report would have been of no assistance to defendant" and that "there was no inconsistency between Konrad's report and his testimony at trial." It therefore held the failure to produce the report to be harmless error. As to this point, Judge Fairchild disagreed, saying that he would "give defense counsel an opportunity

to see the material erroneously withheld. and to attempt to persuade the court that the error was not harmless before the court decides that it was."

. In my view, Judge Fairchild was clearly correct. I believe that the procedure employed by the Court of Appeals improperly denied petitioner the opportunity to examine the agent's report and to argue to the court that the error was not harmless.[1] This result is compelled by the rationale of our *Jencks* decision and the statute which followed it. In *Jencks,* this Court held that relevant and material statements of Government witnesses *must* be turned over to the defense regardless of the trial judge's view as to their usefulness in cross-

[1] The Solicitor General, in his Memorandum in Opposition, p. 2 n. 1, claims that petitioner has raised the contention that he should have been permitted to see the Jencks Act materials to enable him to argue that the error was not harmless "for the first time" in this Court, and argues that "petitioner's failure to make that claim below precludes its assertion here." While the principle is of course sound, the Solicitor General has misapprehended the record in this case. True, petitioner did not raise this argument in his brief before the Court of Appeals, obviously because at that time he had no reason to do so; petitioner was then arguing that the trial judge had erred in failing to order the agent's report disclosed to him, and had no reason to anticipate that the Court of Appeals would accept this argument but hold the error to be harmless, particularly since the Government never contended that the error was harmless. But petitioner did raise this argument at the first opportunity, in his petition for rehearing in the Court of Appeals. At p. 3 petitioner argued: .

"In the alternative, it is respectfully requested that the defendant be granted a rehearing after 'defense counsel is given an opportunity to see the material erroneously withheld' and then be permitted 'to attempt to persuade the court that the error was not harmless.' (Order, Page 8)."

The next two pages of the petition for rehearing were devoted to argument in support of this contention. Clearly, petitioner has adequately preserved the point for our review.

examination. This Court expressly disapproved of the practice of submitting such statements to the trial judge for an *in camera* examination because "only the defense is adequately equipped to determine the[ir] effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense." *Jencks* v. *United States,* 353 U. S. 657, 668–669 (1957). The Jencks Act expressly reaffirmed this aspect of our decision, see S. Rep. No. 569, 85th Cong., 1st Sess., 3 (1957); *Campbell* v. *United States,* 365 U. S. 85, 92 (1961), and on its face gives the defendant the right to examine any relevant statements of Government witnesses to make his own determination of their usefulness. The Act makes clear that it is not ordinarily part of the business of the federal judiciary to determine whether the defense could effectively utilize a producible statement.

The Act thus recognizes that it is impossible for a judge to be fully aware of all the possibilities for impeachment inhering in a prior statement of a Government witness. Of course, it may not be difficult to lay the witness' testimony and his prior statement side by side to compare them for any obvious inconsistencies. This is apparently what the Court of Appeals did here, in view of its conclusions that there was "no inconsistency between Konrad's report and his testimony at trial." But, as we have said before, this hardly exhausts the utility of the statement for purposes of cross-examination:

> " 'Flat contradiction between the witness' testimony and the version of the events given in his report is not the only test of inconsistency. The omission from the reports of facts related at the trial, or a contrast in emphasis upon the same facts, even a different order of treatment, are also relevant to the cross-examining process.' " *Clancy* v. *United States,*

*supra,* at 316, quoting *Jencks* v. *United States, supra,* at 667.

A judge—especially an appellate judge whose only contact with a case is through an examination of a cold record—simply does not have the familiarity with the intimate details of a case necessary to make an adequate determination of the full impeachment value of a witness' prior statement.

> "An apparently innocent phrase. a chance remark, a reference to what appears to be a neutral person or event . . . may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances." *Alderman* v. *United States,* 394 U. S. 165, 182 (1969).

Thus, we have held in a closely related context that:

> "[It is not] realistic to assume that the trial court's judgment as to the utility of the material for impeachment or other legitimate purposes, however conscientiously made, would exhaust the possibilities. In our adversary system, it is enough for judges to judge. The determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis* v. *United States,* 384 U. S. 855, 874–875 (1966).

Of course, whenever an appellate court considers whether a Jencks Act error is harmless, it must of necessity move into the usually forbidden territory of speculation about the utility to the defense of the witness' prior statement. But in view of these considerations, we have held that the harmless-error doctrine should be employed with restraint in Jencks Act cases. *Rosenberg* v. *United States,* 360 U. S. 367 (1959). We warned in

*Rosenberg* that "[a]n appellate court should not confidently guess what defendant's attorney might have found useful for impeachment purposes in withheld documents to which the defense is entitled." *Id.,* at 371.[2] And we rejected the Government's harmless-error argument in *Clancy* v. *United States, supra,* at 316, saying: "Since the production of at least some of the statements withheld was a right of the defense, it is not for us to speculate whether they could have been utilized effectively."

These same considerations require that the petitioner have the opportunity to examine the agent's report and to attempt to demonstrate to the court that the error was not harmless. Affording the petitioner such an opportunity will minimize to the extent possible the dangers of permitting judicial speculation as to the utility of a statement to the defense. "Adversary proceedings will not magically eliminate all error, but they will substantially reduce its incidence by guarding against the possibility that the . . . judge, through lack of time or unfamiliarity with the information contained in and suggested by the materials, will be unable to provide the scrutiny . . . demand[ed]." *Alderman* v. *United States, supra,* at 184.

Our judicial system is designed to function in the context of adversary proceedings. We are therefore reluctant to authorize *ex parte, in camera* determinations unless they are truly necessary to protect important

---

[2] In *Rosenberg,* we held that the failure to turn over the statement of a Government witness to the defense was harmless error only because "the very same information was possessed by defendant's counsel as would have been available were error not committed." 360 U. S., at 371. The Court of Appeals in this case acknowledged that *Rosenberg* did not dispose of this case because of the presence of other relevant information in the agent's report which the petitioner did not already have available.

governmental interests. Indeed, in *Dennis* and *Alderman* the Court, in order to avoid *in camera* determinations akin to those approved by the Court of Appeals here, ordered disclosure of the testimony and conversations involved despite substantial countervailing interests—in *Dennis*, the interest in grand jury secrecy, and in *Alderman*, the interest in national security. In sharp contrast, there is no justification here for not disclosing the agent's statement to the defense, and thus no necessity for the *in camera* determination engaged in by the Court of Appeals. The court had already determined that the Jencks Act gave petitioner the right to examine the agent's report in the first place; at that point, no substantial governmental interest in refusing disclosure of the report remained.[3] Yet disclosure of the report is essential to permit the defense to make an informed

---

[3] In *Palermo* v. *United States*, 360 U. S. 343 (1959), we upheld use of an *in camera* procedure for determining whether a witness' statement is required to be produced under the Jencks Act because such a procedure was necessary to protect one of the Act's major purposes. As Mr. Justice Frankfurter put it:

"The Act's major concern is with limiting and regulating defense access to government papers, and it is designed to deny such access to those statements which do not satisfy the requirements of [subsection] (e), or do not relate to the subject matter of the witness' testimony. It would indeed defeat this design to hold that the defense may see statements in order to argue whether it should be allowed to see them." *Id.*, at 354.

*Palermo*'s approval of an *in camera* procedure with respect to the issue involved in that case is surely not determinative here. The issue involved in *Palermo*, whether the statement met the Act's definition of a producible statement, is one that is much more within the traditional competence of the judiciary than is speculation about the utility of a statement to the defense. More important, the witness' statement in this case concededly does come within the definition of those that Congress has ordered to be produced to the defense, and thus there is no substantial governmental interest requiring protection through *in camera* proceedings.

presentation of the uses to which he might have put the report. And without consideration of such a presentation by counsel, the Court of Appeals could not make a truly informed decision on the harmless-error question.

I would grant the petition for certiorari, vacate the judgment of the Court of Appeals, and remand this case for further proceedings consistent with this opinion.