UNITED STATES, Appellee

v

LOGAN F. CHOATE, Technical Sergeant,
U. S. Marine Corps, Appellant

9 USCMA 680, 26 CMR 460

Lieutenant (jg) Charles D. Hawley, USNR, argued the cause for Appellant, Accused. With him on the brief was Commander Charles Timblin.

Major George M. Lilly, USMCR, argued the cause for Appellee, United States. With him on the brief was Commander Craig McKee, USN.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A board of review affirmed the accused's conviction for wrongful appropriation of money from the mess fund of which he was the noncommissioned officer in charge. We granted review.

Attacking the validity of the findings of guilty, the accused contends he was prejudiced by purportedly erroneous instructions to the court-martial regarding the voluntariness of his pretrial statement which was admitted into evidence. See United States v Jones, 7 USCMA 623, 23 CMR 87. The contention raises the question whether the evidence, in fact, presents an issue of voluntariness for the court-martial's consideration. United States v Dicario, 8 USCMA 353, 24 CMR 163. The board of review below concluded that no such issue was raised. We reach the same conclusion.

The accused admitted he had been advised of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831. He also admitted he knew why he was being questioned. However, he contended he made the statement because he knew how agents of the Office of Naval Intelligence operated, and he "figured that they would have been down there hounding my wife, asking her all kinds of questions and keeping her in a nervous condition besides calling me up every other day and hounding me about the questions." Other testimony shows that two days before the accused made his statement, he had been questioned by agents of the Criminal Investigations Division. On returning home from work that day, he found his wife "nervous" and "upset" because agents had been there. They had informed her the accused had been arrested and was in "a lot of trouble." Also they had questioned her for about 30 to 45 minutes regarding any previous "trouble" the accused might have had; whether he had lipstick on his shirt or handkerchief; and whether he bought things for her, such as a TV set. The accused further acknowledged that his wife did not say the agents had threatened to come back and question her; neither did he recall whether they had threatened to "hound" him. In fact, the agents had not questioned him or his wife again. Two days after the original questioning, the accused made the statement which was admitted into evidence.

Certain circumstances may be more vivid and compelling to one person than to another. Consequently, the effect of a particular act or statement by a law enforcement agent upon an accused under investigation depends upon many

**681**

factors such as the age, intelligence, education, societal experience and background of the accused. What may not make any impression whatever upon a person wise in the ways of law enforcement may loom large in the eyes of a timid, immature, and suggestible youth. Cf. Stein v New York, 346 US 156, 183, 97 L ed 1522, 73 S Ct 1077 (1952). Whatever the circumstance, however, it must rest on fact, not imagination.

Here, the accused claimed he made the statement because he feared he and his wife *would be* ▮▮▮▮▮▮▮ *"hounded"* by the Criminal Investigations Division agents. However, he admitted his wife had been questioned only once and then for no more than 30 to 45 minutes. He himself had also been questioned only once. Neither of them were questioned *for two days before the accused gave his statement.* There is not even a suspicion of "hounding" in the evidence. In our opinion, therefore, there is no issue of voluntariness, and, consequently, no prejudice by reason of the law officer's erroneous instruction on the subject. United States v Spivey, 8 USCMA 712, 25 CMR 216.

The Manual for Courts-Martial, United States, 1951, provides that unless otherwise prescribed in Department regulations a court-martial sentence which as approved by the convening authority includes a punitive discharge or confinement with or without hard labor "immediately . . . reduce[s]" the accused to the lowest enlisted pay grade. Ibid, paragraph 126*e*, as amended by Executive Order 10562, 21 FR 235, January 10, 1956. Under this provision reduction in rank is automatic. United States v Flood, 2 USCMA 114, 6 CMR 114; United States v Smith, 2 USCMA 119, 6 CMR 119.[1] Traditionally, however, the Navy Department has followed a less rigorous course.

Before promulgation of the present Manual for Courts-Martial, a Navy court-martial could reduce an enlisted accused to an intermediate rating instead of to the lowest rating. Also, reduction to the lowest enlisted grade was required only if the sentence included confinement at hard labor for more than three months. Naval Courts and Boards, § 453, page 232, § 622, Note 21, page 300 (1937). When the 1951 Manual came into effect the Navy immediately availed itself of the privilege of mitigating the severity of the Manual provision. It provided that "automatic reductions to the lowest enlisted pay grade under Par. 126*e* MCM will not be effected in the naval service." 1951 Naval Supplement to Manual for Courts-Martial, United States, 1951, section 0122, page 22, change 3. Speaking of this provision in United States v Castner, 3 USCMA 466, 468, 13 CMR 22, we said: "the naval regulation is not couched in terms of a positive command. On the contrary it amounts to no more than a policy declaration." As a result, we held that the court-martial illegally increased the sentence imposed upon the accused when, after announcement in open court of a sentence which did not include reduction in rating, it redeliberated and added reduction in rating to its original sentence. In pertinent part the regulation set out in the 1955 Naval Supplement is identical to the one we considered in the *Castner* case. See also Marine Corps Manual, Volume I, paragraph 9451. ▮▮▮▮▮▮ Since the regulation merely announces a policy, the statement of the policy cannot be injected into the case to influence the decision of the court-martial. United States v Fowle, 7 USCMA 349, 22 CMR 139; United States v Rinehart, 8 USCMA 402, 24 CMR 212.

Had the law officer confined his instruction to a statement that the maximum sentence could include reduction

---

[1] We need not at this time re-examine the rulings in the cited cases to determine whether the provision is a proper exercise of the President's power to fix the maximum limits of punishment (United States v Varnadore, 9 USCMA 471, 26 CMR 251) or whether it constitutes an administrative consequence of the judicial action of the court-martial which in an appropriate case might require an instruction, United States v Cleckley, 8 USCMA 83, 23 CMR 307; cf. 33 Comp Gen 195.

to the lowest pay grade, his action would have been unassailable. Reference to the Naval Supplement, however, brought to the court members' attention the Department policy that an accused sentenced to confinement in excess of three months or to a punitive discharge should "also be sentenced" to reduction in pay grade. A reference of this kind under these circumstances is erroneous and prejudicial. United States v Fowle, supra. However, since the error merely affects a separable part of the sentence it can be corrected by appropriate action by the board of review. United States v Castner, supra.

The decision of the board of review, except as to the sentence, is affirmed. The record of trial is returned to The Judge Advocate General of the Navy for submission to the board of review for reconsideration of the sentence.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in part and dissenting in part):

I agree with the principal opinion in its determination of the first granted issue. With regard to the second, I must differ.

Under paragraph 126e of the Manual for Courts-Martial, United States, 1951, as amended by Executive Order 10652, 21 FR 235, January 10, 1956, the President has provided:

"Unless otherwise prescribed in regulations promulgated by the Secretary of the Department concerned, in the case of an enlisted person of other than the lowest pay grade, a court-martial sentence which, as approved by the convening authority, includes: (1) dishonorable or bad-conduct discharge, whether or not suspended, (2) confinement, or (3) hard labor without confinement, immediately, upon being so approved, shall reduce such enlisted person to the lowest enlisted pay grade; . . ."

Enlisted men may be reduced administratively, so there can be no question about the power of the President to prescribe for their reduction upon conviction. Taking advantage of the Executive exception, the Secretary of the Navy, in section 0109, 1955 Naval Supplement to the Manual for Courts-Martial, United States, 1951, promulgated a regulation providing as follows:

"Automatic reduction to the lowest enlisted pay grade under paragraph 126e, MCM 1951, will not be effected in the naval service. It is the policy of the Department of the Navy that enlisted persons of other than the lowest enlisted pay grade who are sentenced to confinement exceeding three months or to dishonorable or bad-conduct discharge also be sentenced to reduction to the lowest enlisted pay grade. The sentence in such cases should expressly include reduction to the lowest enlisted pay grade."

In the case at bar, the law officer directed the court's attention to the above-mentioned paragraph in the Naval Supplement, and the accused claims he was prejudiced thereby. I fail to find any logic in that contention. And I find less logic in the view taken by my associates that, because this is only a policy declaration, it should not have been brought to the attention of the court-martial. The effect of the provision is to grant a benefit to the offenders in the Naval service for, if they are convicted, they are not reduced in grade unless the court-martial specifically so provides in its sentence, whereas in the absence of the Naval provision, reduction would be automatic. Unlike the policy we considered in United States v Fowle, 7 USCMA 349, 22 CMR 139, then, this is clearly one that inures to an accused's advantage. Accordingly, I pose the following question. Since when has it been error for a law officer to inform a court-martial about a policy declaration which was enacted for the benefit of the accused? Moreover, in order for the court-martial to be advised adequately of the essentials necessary to a proper sentence in the Naval service, it must be informed on the punishment it may impose. The only complaint the accused can urge in this instance is that the court-martial was not left uninformed

**683**

on the law. To my mind that contention is without merit.

I would affirm the decision of the board of review.