UNITED STATES, Appellee

v

JAMES L. WALBERT, Airman First Class,
U. S. Air Force, Appellant

14 USCMA 34, 33 CMR 246

*Lieutenant Colonel Quincey W. Tucker, Jr.*, argued the cause for Appellant, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

*Major Robert M. Haynes* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Emanuel Lewis*.

## Opinion of the Court

QUINN, Chief Judge:

The initial question presented by this certificate of review by The Judge Advocate General of the United States Air Force is whether the law officer at trial erred in refusing a defense request for the production and inspection of a tape recording of an interrogation of the accused by agents of the Office of Special Investigations, which resulted in the accused's submission of a confession.[1]

As its final witness, the Government called Donald A. Ross of the Office of Special Investigations. He testified he interviewed the accused in connection with a report that the accused had submitted a false official claim. He advised the accused of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831, and informed him of the nature of the suspected offenses. The accused discussed the matter "freely," and gave the agent a written, signed statement, admitting his part in the offenses. The defense counsel cross-examined the agent to determine the admissibility of the statement. Pertinent to the certified question are the following excerpts from that cross-examination:

"Q. [DC] You notice in this Prosecution Exhibit 15 there is an amount stated therein, $123.60?

"A. Yes, sir.

"Q. Do you recall Airman Walbert telling you that he did not receive $123.60?

"A. This was after the statement was issued.

"Q. Do you recall this?

"A. Yes, sir.

"Q. Did you make the statement for Airman Walbert to put down $123.60 even though he told you he didn't receive it?

"A. He didn't tell me until after the statement was made.

. . . . .

"Q. Wait a minute. Just answer the question, please. After he told you this, did you or did you not tell Airman Walbert to put down the sum of $123.60 anyway?

"A. No, sir.

"Q. You never told him this?

"A. No, sir.

. . . . .

"Q. Do you recall Airman Walbert making a statement to you that he did not desire to bring anyone else into this matter?

"A. Yes, sir.

"Q. Do you remember making the statement that you 'doubt that anyone else will be brought into this matter so long as we have a statement from you'?

"A. No, sir.

---

[1] Among other offenses, the accused was convicted by a general court-martial at Stead Air Force Base, Nevada, of presenting a false claim for travel of his dependent wife, and adultery, in violation of Articles 132 and 134, Uniform Code of Military Justice, 10 USC §§ 932 and 934, respectively. The court-martial imposed a sentence including a bad-conduct discharge and confinement at hard labor for three years. On review, the convening authority approved the findings of guilty and the sentence, with a reduction in the period of confinement to two years. A board of review affirmed.

"Q. You don't recall that?

"A. No, sir.

"Q. You never made that statement?

"A. No, sir.

"Q. Was this conversation on tape?

"A. It was.

"Q. I ask you again: Did you or did you not tell Airman Walbert that you 'doubt whether anyone else will be brought into this so long as we have a statement'?

"A. I don't remember making that statement, sir.

"Q. You do not remember making the statement. Where is this tape?

"A. It's in our office in Portland, sir.

. . . . .

"DC: At this time, on behalf of the accused, I would like to make demand on the prosecution to produce this tape before the confession is either ruled on or—

"LO: We will have an out-of-court hearing."

At the out-of-court hearing, the law officer asked defense counsel to give the "reasons" for his demand for the tape of the interview. Two reasons were given. In substance, they were: (1) that Agent Ross had said he did not "recall whether he made certain statements to the accused," and he "denie[d]" making others; the tape, defense counsel argued, would establish whether Ross "lied under oath"; and (2) the tape would show the confession was the product of "unlawful inducement." The law officer ascertained that defense counsel knew of the existence of the tape before trial, but he had made no effort to obtain it because he thought it would be "useless" to do so. At the end of the hearing, the request was denied. The board of review sustained the ruling. It reasoned that 18 USC § 3500, the so-called Jencks Act, which deals with the production of a previous statement by a Government witness, does not include the tape recording of an interview between the accused and an enforcement agent. The Jencks Act was enacted as the result of the decision of the United States Supreme Court in Jencks v United States, 353 US 657, 1 L ed 2d 1103, 77 S Ct 1007 (1957). It provides in material part as follows:

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

. . . . .

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement." [18 USC § 3500(b)., (e) (1) (2).]

The board of review held that the agent's remarks at the interview did not constitute a statement "to an agent of the Government" within the meaning of the Act, but were statements to the accused. It, therefore, concluded the accused had no right to production of the tape of the interview.

Two issues were actually raised by defense counsel's demand for the tape. The first relates to discovery and inspection of evidence which might tend to show there was coercion or improper influence of the accused during the interview. As to this phase of the problem, the law officer correctly inquired into defense counsel's efforts before

trial to obtain the relief requested. See Rule 16, Federal Rules of Criminal Procedure; United States v Heinel, 9 USCMA 259, 26 CMR 39; Shores v United States, 174 F2d 838 (CA 8th Cir) (1949); Feld, "Court-Martial Practice: Some Phases of Pretrial Procedure," 23 Brooklyn Law Review 25, 36 (1956). On the showing made, it would be difficult to conclude denial of the request was wrong. However, the second aspect of the request, which dealt with possible impeachment of the agent, presents a different situation.

Before enactment of 18 USC § 3500, it was settled law that for the purpose of possible impeachment, the defense could require the Government to produce the previous statement of a witness relating to the subject matter to which the witness had testified under direct examination. Jencks v United States, supra. The rule was followed in the military practice. United States v Heinel, supra. Fearing that a too-expansive reading of the *Jencks* case "would compel the undiscriminating production of agent's summaries of interviews regardless of their character or completeness," Congress passed Section 3500 to limit production to statements made by the witness, as distinguished from mere summaries of information obtained by him. Palermo v United States, 360 US 343, 350, 3 L ed 2d 1287, 1294, 79 S Ct 1217, 1223 (1959). The limitation, however, was not intended to curtail the defendant's right to "reports and statements in possession of the Government touching the events and activities as to which a Government witness has testified at the trial." Senate Report No. 981, 85th Congress, 1st Session.

The tenor of Government counsel's argument here, and that of the opinion of the board of review below, appear to concede that if Ross had filed a verbatim report of what he said and did at the interview, the accused would be entitled to the production of that writing. See Clancy v United States, 365 US 312, 5 L ed 2d 574, 81 S Ct 645 (1961); United States v Sheer, 278 F2d 65, 68 (CA 7th Cir) (1960). We perceive no distinction between such a report and the tape recording. Each represents precisely what the agent previously said in regard to the subject matter as to which he testified in direct examination. Although the board of review attempted to distinguish the case, the Court of Appeals for the 5th Circuit in De Freese v United States, 270 F2d 737, 740 (1959), sustained the accused's right to production of a recording of a conversation between him and an agent. The trial judge granted the defense request for production of a wire recording of the conversation. At the same time, however, the defense demanded the Government furnish it with a machine that could play the record. The Government had previously rented such a machine, but had returned it to the lessor. The trial judge denied the request for the machine. On appeal, the latter ruling was sustained on the ground the Government could not be required "to furnish something it does not have and cannot obtain." The Court of Appeals also referred to the order directing production of the original wire recording. Significantly, it said this was all the accused was entitled to in "justice and fairness." We agree that the accused is entitled to at least that much, especially since the tape related to the admissibility of his confession. Cf. Shores v United States, supra. We, therefore, answer in the negative the first certified question, which asks whether the board of review was correct in its determination that denial of the defense request for production of the tape did not violate the Jencks Act.

The second certified issue asks whether denial of the request for the tape prejudiced the accused. As previously noted, the request was based upon the two-edged claim that the tape would disclose evidence of "unlawful inducement" and reveal inconsistent statements by the witness. The accused testified on the voluntariness issue, and, appropriately, we may look to his version of the interview in considering the effect of the law officer's ruling. See United States v Brown, 10 USCMA 482, 487, 28 CMR 48. His testimony shows unmistakably there was no coercion, and

no such inconsistency or conflict in the agent's direct testimony as would justify excluding the confession.

On direct examination, the accused testified that "when . . . [he] was making the statement" he said he had never received a check for $123.60, but the agent told him to "go ahead and put it down anyway"; so he did. Ross, it will be recalled, testified he did not tell the accused to "put down . . . [that amount] anyway." The accused did not testify that he did not want to put down the amount in issue, or even that he believed or imagined that Ross' remark was a command to insert it in the statement. On the contrary, when asked if "Any coercion [was] used," he answered, "No." What this part of the accused's testimony amounts to, therefore, is a denial that this particular item in his pretrial statement is true. An attack on the truthfulness of a specific part of a con ■ fession does not show the confession was involuntarily made; and, it does not, therefore, affect admissibility of the confession. United States v Ledlow, 11 USCMA 659, 662, 29 CMR 475.

Turning to whether Ross told the accused no one else would be "involved" in the matter "so long as . . . [they had] a statement" from him, we may again assume he was untruthful or mistaken. The accused's version, however, which is set out below, leaves no room to doubt the voluntariness of his confession:

"Q. [DC] Was a female named during this conversation?
"A. Yes, sir.

"Q. Will you tell the court what surrounded this name? What conversation transpired, if any?
"A. I was also giving a statement there, and it got down to where a girl was involved. Mr. Ross asked me to put down her name. I stated I didn't want to involve her or anybody else in this. I said it was

just myself. He said, well, he doubted very much that anybody else would be involved if I made a statement.
"Q. Why did you make a statement?
"A. I just felt relieved that that thing was over with.

 . . . . .

"Q. [LO] Did anybody offer you any special inducement?
"A. Just that when I mentioned the girl's name there, he said that he doubted very much if she would be involved if I gave a statement.
"Q. Any coercion used?
"A. No, ma'am."

The accused did not say, or intimate, he would not have confessed unless he was promised the girl would not be involved in the investigation.[2] The record of trial demonstrates the accused did not rely upon the agent's statement, but confessed because, as he testified, he "just felt relieved that that thing was over with." A confession prompted by conscience is not involuntary. United States v Waller, 11 USCMA 295, 29 CMR 111; United States v McQuaid, 9 USCMA 563, 26 CMR 343. We, therefore, answer the second certified question in the negative; and on that basis, we affirm the decision of the board of review.

Judge KILDAY concurs.

FERGUSON, Judge (concurring in the result):

I agree with the Chief Judge that no issue was raised regarding the voluntariness of accused's confession. I do so only on the basis that accused unequivocally testified that he made the statement because he "just felt relieved that that thing was over with" and not because of any promise not to involve his paramour if he confessed. Had the latter consideration governed his election to speak, voluntariness would have been in issue, for, as recently stated by the Supreme Court in Shotwell Mfg. Co.

---

[2] For the purposes of this case, we need not consider whether a specific promise of this kind, as to a person unrelated to the accused by blood or law, would constitute an improper inducement. Cf. United States v Choate, 9 USCMA 680, 26 CMR 460.

v United States, 371 US 341, 9 L ed 2d 357, 83 S Ct 448 (1963), at page 347:

". . . The controlling test is that approved in *Bram*: ' "a confession, in order to be admissible, must be free and voluntary: *that is,* . . . *not* . . . *obtained by any direct or implied promises, however slight. . . ."* ' *Bram v United States, supra,* at 542–543. Evidence so procured can no more be regarded as the product of a free act of the accused than that obtained by official physical or psychological coercion." [Emphasis supplied.]

In like manner, I agree that the accused was not prejudiced by failure to order the tape recording produced to determine whether the OSI agent might be impeached regarding the inclusion in accused's statement of the declaration that the latter had actually received the $123.60 involved in the false claim. Accused was not charged with receiving such sum, but with making a false claim therefor. He fully and voluntarily confessed to that offense, and the truthfulness of his statement in this respect is not contested. Having so confessed, the question of receiving the proceeds is immaterial, and there is, therefore, no prejudice to his substantial rights. Uniform Code of Military Justice, Article 59, 10 USC § 859.

I disassociate myself, however, from that portion of the opinion in which it is suggested that accused was under a duty to request production of the tape prior to the trial. To the contrary, there is in military law no pretrial discovery practice of the nature involved in Rule 16, Federal Rules of Criminal Procedure. Cf. United States v Robinson, 13 USCMA 674, 33 CMR 206. Moreover, even under Rule 16, it is doubtful whether its discovery would be ordered before the trial. Monroe v United States, 234 F2d 49 (CA DC Cir) (1956), cert den 352 US 873, 1 L ed 2d 76, 77 S Ct 94. In any event, it is my opinion that the so-called Jencks Act, 18 USC § 3500, governs here, for it was not a copy of accused's statement which was desired but a tape recording of the agent's interview with him. And, as my brothers note, that statute provides that only "[a]fter a witness called by the United States has testified on direct examination" may the accused move for production of the witness' statements. Palermo v United States, 360 US 343, 3 L ed 2d 1287, 79 S Ct 1217 (1959).

Nevertheless, the erroneous refusal to produce the recordings was not prejudicial and I, for the reasons noted, join in the answers given to the certified questions.