UNITED STATES, Appellee

v

JOSE R. ALBO, Lance Corporal, U. S. Marine Corps, Appellant

22 USCMA 30, 46 CMR 30

No. 25,415

November 17, 1972

*Lieutenant James T. Newsom,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Captain D. A. Higley,* USMC.

*Lieutenant Commander Harvey E. Little,* JAGC, USN, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel George L. Bailey,* USMC, and *Lieutenant Colonel L. K. O'Drudy, Jr.,* USMC.

## Opinion of the Court

DARDEN, Chief Judge:

We granted review of this case to consider whether a violation of the so-called Jencks Act (18 USC § 3500) occurred during the special court-martial of the accused for possession of heroin.

At the trial, Staff Sergeant Grenier, an agent of the Criminal Investigation Division (CID) of the Marine Corps Air Station at Cherry Point, North Carolina, testified on an issue of probable cause for a search. Grenier was examined about his investigation and the information he received before the accused was apprehended on May 17, 1971. He testified that he had received detailed information from confidential informants several times between May 12 and May 17. On cross-examination he responded that before testifying he had refreshed his recollection from what he called "Case Activity Notes." The defense counsel requested that the notes be produced pursuant to the Jencks Act, supra, for his use in cross-examining the witness. Objecting to this request the trial counsel pointed out that the witness had testified from personal knowledge without the notes and contended that the notes contained much information not being used in the accused's case. The military judge denied the request and did not elaborate on his ruling. When a second investigator, Sergeant Rogers, testified later, cross-examination elicited that he, too, had consulted "Case Activity Notes" to refresh his recollection. After defense counsel requested production of these documents under the Jencks Act, the trial counsel objected on the grounds, inter alia, (1) that the Jencks Act is not applicable because the witnesses were criminal investigators, and (2) that producing the documents would identify confidential informants in violation of paragraph 151*b*, Manual for Courts-Martial, United States, 1969 (Revised edition). The defense counsel declared that he

**22 USCMA 31**

was not seeking the identity of the informants but that he was seeking statements of the agents who had been called as witnesses for the Government in order that he might cross-examine them on their credibility.[1] Although the trial judge directed the trial counsel to provide the defense counsel with a copy of the CID report, the defense counsel stated that this did not contain the information he sought and that he expected the "Case Activity Notes" to deal more specifically with the information provided by the confidential informants. The military judge then denied the defense request without examining the notes or making any inquiry as to their nature and without ordering them attached to the record.

 The Jencks Act, the text of which is set out in the margin,[2] ap-

---

[1] We are aware of no case holding that the Jencks Act procedure is available to force the Government to disclose the identity of confidential informants. This information is privileged in determining probable cause in search and seizure cases. McCray v Illinois, 386 US 300, 18 L Ed 2d 62, 87 S Ct 1056 (1967), rehearing denied, 386 US 1042, 18 L Ed 2d 616, 87 S Ct 1474 (1967); cf. Roviaro v United States, 353 US 53, 1 L Ed 2d 639, 77 S Ct 623 (1957).

[2] **"Demands for production of statements and reports of witnesses**

"(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

"(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

"(c) If the United States claims that any statement ordered to be produced under this section contains matter which does not relate to the subject matter of the testimony of the witness, the court shall order the United States to deliver such statement for the inspection of the court in camera. Upon such delivery the court shall excise the portions of such statement which do not relate to the subject matter of the testimony of the witness. With such material excised, the court shall then direct delivery of such statement to the defendant for his use. If, pursuant to such procedure, any portion of such statement is withheld from the defendant and the defendant objects to such withholding, and the trial is continued to an adjudication of the guilt of the defendant, the entire text of such statement shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling of the trial judge. Whenever any statement is delivered to a defendant pursuant to this section, the court in its discretion, upon application of said defendant, may recess proceedings in the trial for such time as it may determine to be reasonably required for the examination of such statement by said defendant and his preparation for its use in the trial.

"(d) If the United States elects not to comply with an order of the court under subsection (b) or (c) hereof to deliver to the defendant any such statement, or such portion thereof as the court may direct, the court shall strike from the record the testimony of the witness, and the trial shall proceed unless the court in its discretion shall determine that the interests of justice required that a mistrial be declared.

"(e) The term 'statement', as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States, means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him;

(2) a stenographic, mechanical, electrical, or other recording, or a

plies to courts-martial. United States v Walbert, 14 USCMA 34, 33 CMR 246 (1963); United States v Heinel, 9 USCMA 259, 26 CMR 39 (1958). Under its terms, after a Government witness testifies on direct examination, the defense is entitled to the production of documents that are (1) statements of the witness as defined by the statute, (2) in the possession of the Government, and (3) related to the subject matter of the witness' testimony. If a statement meets the statutory criteria, the defense has a right to its production without any showing that the document is inconsistent with the testimony of the witness or that it would be useful for impeachment. Campbell v United States, 365 US 85, 5 L Ed 2d 428, 81 S Ct 421 (1961); Scales v United States, 367 US 203, 6 L Ed 2d 782, 81 S Ct 1469 (1961), rehearing denied, 366 US 978, 6 L Ed 2d 1267, 81 S Ct 1912 (1961). When doubt exists about whether the statute compels production of a particular statement, the Government should submit it to the trial judge for an in camera determination. Palermo v United States, 360 US 343, 3 L Ed 2d 1287, 79 S Ct 1217 (1959).

We consider first whether the "Case Activity Notes" are "statements," as defined by subsection (e)(1) of the Act. Since the military judge did not examine the notes or attach them to the record, their exact content is not shown. Appellate defense counsel suggest that these were memoranda made by each agent during the course of his investigation and that they describe his activities and the information learned by him. If, for example, an informant described a person allegedly possessing or selling drugs and the agent to whom this was reported recorded that information, whether the agent's testimony at trial was consistent with the information he re-

corded earlier would be important for impeachment purposes.

Supporting its contention that investigative notes of this kind are not Jencks Act statements, the Government relies on Needelman v United States, 261 F2d 802 (CA 5th Cir) (1958), certiorari dismissed, 362 US 600, 4 L Ed 2d 980, 80 S Ct 960 (1960), and McGill v United States, 270 F2d 329 (CA DC Cir) (1959), certiorari denied, 362 US 905, 4 L Ed 2d 555, 80 S Ct 615 (1960). In *Needelman,* a narcotics agent made "contemporaneous" notes of interviews and his activities in an investigation and he also prepared a "case report." Before trial, the agent referred to these notes to refresh his recollection. The trial judge allowed defense counsel to see the case report but refused production of the notes. The *Needelman* court decided that the notes were not strictly within the Jencks Act and affirmed denial of their production as not being an abuse of discretion. In *McGill,* a police officer was asked if he had made "notes of any conversations" that occurred between him and other witnesses. He replied that he had notes and had consulted them before coming to court. The *McGill* court said the Jencks Act applied but held that the statute did not require the notes to be produced.

Appellate defense counsel argue that *Needelman* and *McGill* were decided before Clancy v United States, 365 US 312, 5 L Ed 2d 574, 81 S Ct 645 (1961), and are inconsistent with it and the weight of authority as represented by Lewis v United States, 340 F2d 678 (CA 8th Cir) (1965).

In *Clancy,* one Government agent testified that after an interview with a defendant he made a memorandum of the interview. The opinion does not indicate whether the memorandum was signed. Another Government agent present at other interviews testified

transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

(3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury." [18 USC § 3500.]

that he took no notes but that he later prepared a memorandum from notes taken by a third agent. Both he and the third agent signed this memorandum. The trial court ordered the third agent's original, apparently unsigned, notes produced but refused to order the production of either memorandum. The *Clancy* opinion held that these memoranda were statements within the meaning of subsection (e) (1) of the Jencks Act and should have been produced. It did not directly decide whether notes made by the witnesses at the time of the interviews are subject to production under the Jencks Act. If they were but a "truncated version" of an interview with a person who later testified at trial, their producibility is a question that was reserved in Palermo v United States, supra. See United States v Augenblick, 393 US 348, 21 L Ed 2d 537, 89 S Ct 528 (1969).

From our examination of the cases decided by the United States Courts of Appeals, we agree with appellate defense counsel that the weight of authority supports the furnishing of agents' notes for possible impeachment after an agent has testified. The decision of the Fourth Circuit in Holmes v United States, 271 F2d 635 (1959), is representative. In *Holmes*, the Government argued that the Jencks Act did not apply to statements prepared by a Government agent who became a witness at the trial. The *Holmes* court pointed out that:

". . . The written report of the agent, however, is just as much a verbatim statement of the agent, who prepares it, as a written statement of an informer, incorporated in the report, is the statement of the informer. It is a statement within the literal and evident meaning of subsection (e) of the Act. Its use to contradict the agent who prepared it in no way contravenes the policy of the Act against the use of an investigator's notes or summaries of information to contradict his informer. In Palermo v United States, it was held that an agent's summary of information obtained from

his informer was not a 'statement' within the meaning of subsection (e) of the Act when its use was sought for purposes of cross examining the informer, but nothing in that opinion suggests the same summary would not be a 'statement' within the meaning of subsection (e) of the Act when its use is sought to cross examine the agent who prepared it, the question being what information the agent actually obtained during the course of his investigation." [*Id.*, at page 638.] [Footnotes omitted.]

See also Mims v United States, 332 F2d 944 (CA 10th Cir) (1964), certiorari denied, 379 US 888, 13 L Ed 2d 92, 85 S Ct 158 (1964); United States v McCarthy, 301 F2d 796 (CA 3d Cir) (1962); United States v Sheer, 278 F2d 65 (CA 7th Cir) (1960); United States v O'Connor, 273 F2d 358 (CA 2d Cir) (1959); United States v Adams, 41 CMR 874 (AFCMR 1969); United States v White, 37 CMR 791 (AFBR 1966).

■ We agree with the reasoning in *Holmes*, the other cited Courts of Appeals decisions, and those of the Courts of Military Review. The notes of a Government agent who testifies at a court-martial are producible if the notes relate to the testimony of the agent. In this case the military judge should have examined the notes to decide what part of them related to the testimony of the agents.

■ Not every Jencks Act error is prejudicial. Rosenberg v United States, 360 US 367, 3 L Ed 2d 1304, 79 S Ct 1231 (1959); see also Lewis v United States, 340 F2d 678 (CA 8th Cir) (1965). Consequently, we must consider the circumstances to determine the extent to which the error may have affected the result.

Appellate defense counsel contend that the error was prejudicial because defense was denied the possible impeachment of Government agents who testified on the existence of probable cause for a search. The testimony of the agents included detailed information that they received from confiden-

tial informants. This information allegedly included the accused's name and the description on which his later apprehension was based. Appellate defense counsel suggest that whether the agents' later testimony at trial was consistent with such notes would be of obvious importance for impeachment purposes.

The Government contends that the accused would have been apprehended irrespective of his fitting a description a confidential informant had furnished. According to this argument, the accused entered a room in which the agents had just discovered a large quantity of what they suspected to be heroin, he was in an intoxicated condition, and they detected no odor of alcohol. A search of the accused was incident to an arrest for intoxication and the description the informants gave of him was only one of several factors leading to his apprehension.

The defense view is supported by the testimony of Sergeant Grenier: "At approximately 1540 a man later identified as Lance Corporal ALBO entered the room. *From the identification that informant number two* had given I placed him under military apprehension." (Emphasis supplied.)

■ Our study of the record convinces us that the testimony of the two agents reasonably supports the implicit finding of the trial judge that the reliability of the informants was verified sufficiently to connect the accused to the drug offense. But we have no way of knowing that the notes did not impugn the testimony the agents gave, or of determining the effect of their possibly impeaching nature on the military judge. Since the notes were not attached to the record, we are unable to determine that if they had been given to the defense, no

impeachment could have occurred and thus that the error was harmless.[3]

Having determined that an error occurred and that the record precludes a conclusion that it was harmless, we must decide the appropriate corrective action. Some Article III courts have reversed such cases without further proceedings. Clancy v United States, supra; Holmes v United States, supra. Other Article III courts have returned the record for further proceedings at the trial level to determine whether the statements should have been produced. Campbell v United States, supra; Government of Virgin Islands v Lovell, 378 F2d 799 (CA 3d Cir) (1967).

■ Because a court-martial has no continuing existence, no regular procedure exists for our ordering the case remanded for a determination concerning whether part of the Case Activity Notes related to the subject of the agents' testimony. Cf. United States v DuBay, 17 USCMA 147, 37 CMR 411 (1967). Consequently the decision of the Court of Military Review is reversed and the findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge DUNCAN concurs.

QUINN, Judge (concurring):

I concur in the principal opinion's determination that the notes should have been produced at defense counsel's request. I would, however, direct that the matter be remanded to a court-martial for consideration of the limited question of whether the notes are of a kind which could have been used for impeachment purposes. United States v Cook, 20 USCMA 504, 508, 43 CMR 344 (1971).

---

[3] This is only an appellate function in testing a Jencks Act violation for prejudice. Under Palermo v United States, 360 US 343, 3 L Ed 2d 1287, 79 S Ct 1217 (1959), the decision for the trial judge on a Jencks Act issue is not whether the statement (notes) would be useful for impeachment but whether it is a statement within the meaning of the Jencks Act and whether a part of it should be excised because it is not related to the subject of the witness' testimony.