# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

---

### UNITED STATES
Appellee

**v.**

### Norman L.  CLARK Sr., Sergeant
United States Army, Appellant

### No. 19-0411
Crim. App. No. 20170023

Argued February 11, 2020—Decided April 22, 2020

Military Judge: Matthew A. Calarco

For Appellant: *Lieutenant Colonel Christopher Daniel Carrier* (argued); *Lieutenant Colonel Tiffany D. Pond, Major Angela Swilley,* and *Captain Steven J. Dray* (on brief).

For Appellee: *Major Jonathan S. Reiner* (argued); *Colonel Steven P. Haight, Lieutenant Colonel Wayne H. Williams*, and *Major Hannah E. Kaufman* (on brief); *Captain Christopher T. Leighton.*

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges RYAN, OHLSON, and MAGGS,  joined.

---

Judge SPARKS delivered the opinion of the Court.

Contrary to his pleas at a general court-martial, Appellant was convicted by a panel of officer and enlisted members of false official statement, rape of a child, and sexual abuse of a child, in violation of Articles 107 and 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 920b (2012).[1] The resulting convictions stem from his commission of lewd acts upon and the rape of his four-year-old daughter, AC. The adjudged and approved sentence provided for a reduction to E-1, twelve years of confinement, forfeiture of all pay and allowances, and a dishonorable discharge. The United States

---

[1] The United States Army Court of Criminal Appeals mistakenly stated that Appellant was convicted of sexual assault of a child instead of sexual abuse of a child.

Army Court of Criminal Appeals affirmed the findings and sentence.

We granted review to determine whether the military judge abused his discretion in failing to strike the testimony of two Criminal Investigation Command (CID) Special Agents (SAs) under Rule for Courts-Martial (R.C.M.) 914, and, if so, what the correct standard is to assess prejudice, and whether there was prejudice in this case. We conclude that the military judge erred when he denied Appellant's R.C.M. 914 motion, and that assessing for prejudice under the nonconstitutional error standard is appropriate in this instance. The error in this case did not have a substantial influence on the findings.

## I.

## Background

In its opinion below, the lower court helpfully set out the relevant facts and procedural background for resolution of the issues in the case:

> This case started when AC complained of vaginal pain in the form of a rash and a burning sensation during urination. At a medical appointment to treat AC's vaginal pain, a pediatric nurse observed vesicles (fluid filled blisters) on the inside of AC's labia majora. Testing of these vesicles revealed AC had contracted a form of genital herpes, Herpes Simplex Virus Type-2 (HSV-2), a viral infection. HSV-2 genital herpes is contracted when a person's genitalia makes direct physical contact with an infected person's mouth, genital tract, or anus. AC's treating pediatrician testified "a preadolescent female, not sexually active female, would obtain or contract genital herpes ... in some non-innocent sexual way ...."

> An investigation commenced to determine the infected person who sexually engaged with AC, causing her to contract HSV-2 genital herpes and manifest vesicles on the inside of her labia majora. This court-martial commenced after appellant tested positive for HSV-2 genital herpes and confessed to CID agents to raping and sexually assaulting AC. Appellant's sole assignment of error involves his confession to CID agents during the course of two separate interviews conducted on back-to-back days.

On the first day, appellant waived his rights, engaged in a lengthy interview with CID agents, and made several incriminating admissions. On the second day, appellant voluntarily returned to the CID office, again waived his rights, and confessed, in the beginning of the interview, to penetrating AC with his penis to the depth of his fingernail. Appellant stated AC was too tight for him to enter further so he thrust his penis between her legs until he ejaculated.

Appellant's two interviews were video recorded by CID using a case tracker system. After an interview, an agent must download a video recording from the case tracker system onto a digital media disc to preserve the interview. The first day's interview comprised three discs [Discs 1, 2, and 3] and the second day's interview comprised two discs [Discs 4 and 5]. At the time of downloading, the CID agents believed Disc 4 and Disc 5 contained the entire interview from day two. Several months after appellant's interviews, CID agents discovered the contents of Disc 4 actually depicted the beginning of the day one interview, as opposed to the beginning of the day two interview where appellant confessed to penetrating AC. The failure to adequately copy and preserve Disc 4 underlies appellant's alleged R.C.M. 914 error.

Upon learning about the problems with Disc 4, the defense first filed a motion under R.C.M. 703 to abate the proceedings. A lengthy motion hearing ensued to determine if such a Disc 4 existed, the efforts CID agents took to find such a disc, and, in the absence of any such disc, the actual nature and contents of the beginning of the day two interview. The military judge made detailed written findings of fact and conclusions of law on the R.C.M. 703 motion, which are fully supported by the record, determining that CID failed to preserve a Disc 4 depicting the beginning of the day two interview. We now pause to highlight the relevant portions of the military judge's ruling.

The military judge found "[d]espite relatively exhaustive efforts to locate ... [a disc depicting the beginning of the day two interview], to include searching every file in the office and examining other copies that should have been duplicates of the [disc] ... that [portion of the] interview was never recovered." Having determined that portion of the

3

interview no longer existed, the military judge next made findings of fact regarding the nature of the lost evidence.

Four CID agents and one military special victim prosecutor, Lieutenant Colonel (LTC) JB, testified that, at the beginning of the day two interview, appellant confessed to inserting his penis into AC's vagina and ejaculating. The witnesses testified that appellant stated he was "fishing" between AC's legs and buttocks as he tried to insert his penis into what he called his daughter's "pussy." The witnesses confirmed that appellant waived his rights, voluntarily spoke to the agents, received multiple breaks and food, and did not receive any threats or promises from CID. The defense presented no witnesses during the motion hearing to contradict the government witnesses' testimony as to appellant's incriminating statements or his treatment during the interview.

When questioned regarding any possible CID motivation for losing the disc, LTC JB stated:

> [I]f there was a worse DVD for CID to lose, if you will, this would be it. I mean, there's absolutely nothing on this DVD that painted CID in a bad light, whatsoever. There's absolutely no reason for any agent to want to get rid of it or not to produce it because there was ... nothing exculpatory on it, it was all inculpatory in detailing what he had done to his daughter. So there would absolutely be no reason for an agent to try to get rid of it, I mean, there had been multiple attorneys there watching.

The military judge denied the defense motion to abate the proceedings because of the lost disc. While this ruling could have been the culmination of any further litigation regarding the lost disc at the trial level, the government opened the door to a defense motion under R.C.M. 914 when two SAs testified as to comments they made to appellant from the beginning of the day two interview. The defense moved to strike their testimony under R.C.M. 914. [The parties agreed that the military judge could consider the evidence from the R.C.M. 703 motion in ruling on the R.C.M. 914 motion. Adopting these findings of fact,] [t]he military judge denied the defense R.C.M. 914 motion holding that the comments of the agents from the beginning of the

day two interview were not "statements" for purposes of R.C.M. 914.

*United States v. Clark*, No. ARMY 20170023, 2019 CCA LEXIS 247, at *2—7, 2019 WL 2455504, at *1—3 (A. Ct. Crim. App. June 10, 2019) (alterations in original) (footnotes omitted).

## II.

## R.C.M. 914

A military judge's decision whether to strike testimony under R.C.M. 914 is reviewed for an abuse of discretion. *United States v. Muwwakkil*, 74 M.J. 187, 191 (C.A.A.F. 2015). An abuse of discretion occurs when a military judge's findings of facts are clearly erroneous or his conclusions of law are incorrect. *United States v. Olson*, 74 M.J. 132, 134 (C.A.A.F. 2015).

R.C.M. 914(a) states "[a]fter a witness other than the accused has testified on direct examination, the military judge" upon motion of the opposing party shall order the production of "any statement of the witness that relates to the subject matter concerning which the witness has testified." A "statement" is defined, in part, as "[a] substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and contained in a[n] ... electrical, or other recording." R.C.M. 914(f)(2).

The Jencks Act requires the military judge, upon motion by the accused, to order the government to disclose prior "statement[s]" of its witnesses that are "relate[d] to the subject matter" of their testimony after each witness testifies on direct examination. 18 U.S.C. § 3500(b). "In 1984, the President promulgated R.C.M. 914, and this rule 'tracks the language of the Jencks Act, but it also includes disclosure of prior statements by defense witnesses other than the accused.'" *Muwwakkil*, 74 M.J. at 190 (citation omitted). "Given the similarities in language and purpose between R.C.M. 914 and the Jencks Act, we have conclude[ed] that our Jencks Act case law … should inform[] our analysis of R.C.M. 914 issues." *Id.* at 191.

The military judge denied Appellant's R.C.M. 914 motion, finding that the agents' comments were not statements for R.C.M. 914 purposes because they were made in order to illicit statements from Appellant. The question before us is

5

whether the agents' comments during Appellant's interrogation qualified as "statements" under R.C.M. 914.

The Government argues that "[b]ecause the [agents'] questions contained on the missing disc were merely interrogatories designed to get something of evidentiary value—appellant's statement in response—they are not statements for purposes of [R.C.M.] 914." Brief for the Government at 18, *United States v. Clark*, No. 19-0411 (C.A.A.F. Dec. 12, 2019). In *United States v. Susskind*, 4 F.3d 1400, 1406 (6th Cir. 1993), the United States Court of Appeals for the Sixth Circuit stated:

> There may be rare occasions when a lawyer's question to a witness can constitute a "statement," but ordinarily a statement ends with a period, not a question mark. See, for example, Rule 801(a), Fed. R. Evid., defining a statement as an "assertion." Nothing in the transcript of the questions posed by Mr. Janice suggests to us that there is any reason, in this case, to give the statutory term a broader meaning than it would have in ordinary usage. The questions simply were not "statements" within the meaning of the [Jencks] Act."

Although there is no way to determine with certainty as to what was said on missing Disc 4, we can look to the remaining discs for guidance. On the remaining discs, the SAs made a variety of assertions while interrogating Appellant. The remaining discs establish the improbability that the SAs simply asked Appellant questions on missing Disc 4. Accordingly, *Susskind* is inapplicable to the issue before us.

In *United States v. Walbert*, 14 C.M.A. 34, 36—37, 33 C.M.R. 246, 248—49 (1963), this Court held that a tape recording of an interrogation at which the accused signed a confession was subject to the Jencks Act and should have been disclosed once the interrogating agent testified to matters regarding the admissibility of the confession. The holding in *Walbert* does not support the military judge's conclusion that the agents' remarks at the interview did not constitute "statements" because they were statements made to the accused. Similarly, we have held that written notes by a government agent are "statements" if the agent testifies at trial. *See United States v. Albo*, 22 C.M.A. 30, 34, 46 C.M.R. 30, 34 (1972) ("The notes of a Government agent who testifies at a court-martial are producible if the notes relate to the testimony of the agent.").

*Walbert* and *Albo* reveal that our jurisprudence has favored an expansive interpretation of the definition of "statement" with respect to the Jencks Act. Consistent with that approach, we conclude the agents' comments on Disc 4 contained "statements" under R.C.M. 914. Our conclusion on this point is reinforced by the text of R.C.M. 914 which indicates that a videotaped interrogation constitutes a "statement" because it meets the R.C.M. 914(f)(2) standard of being "[a] substantially verbatim recital of an oral statement … that is recorded contemporaneously with the making of the oral statement and contained" in a recording. Accordingly, the military judge erred in concluding that the agents' comments during Appellant's interrogation were not "statements" pursuant to R.C.M. 914.

The Supreme Court and our Court have indicated that good faith loss or destruction of Jencks Act material and R.C.M. 914 material may excuse the government's failure to produce "statements." *Muwwakkil*, 74 M.J. at 193; *United States v. Augenblick*, 393 U.S. 348, 355–56 (1969). A finding of sufficient negligence may serve as the basis for a military judge's conclusion that the good faith loss doctrine does not apply. *Muwwakkil*, 74 M.J. at 193.

Because the military judge denied Appellant's motion by concluding that the agents' comments were not statements, his ruling did not consider whether the good faith doctrine applied. However, the military judge adopted his finding of fact from his written ruling on the R.C.M. 703 motion. In that motion, the military judge found:

> no evidence of bad faith on the part of any government actor either before or after the evidence was lost. The Court finds the agents of the Ft. Campbell CID Office took considerable efforts to find the lost disc, even if there was some room to reinforce their efforts. To be sure, the Ft. Campbell CID Office appears to have inadequate procedures to ensure they know who is conducting the proper preservation of interviews recorded on Casecracker, at least in this case….

In this circumstance, it would not be unreasonable for this Court to conclude that the military judge made a negligence finding when he found that "the Ft. Campbell CID Office appears to have inadequate procedures to ensure they know who is conducting the proper preservation of interviews recorded on Casecracker, at least in this case." However, for

the purposes of this opinion, we may assume without deciding that the Government was sufficiently negligent and further assume that the good faith loss doctrine does not apply. As will be discussed below, we may still affirm the findings if we are convinced that the R.C.M. 914 error was harmless.

## III.

## Prejudice

At the trial level, R.C.M. 914(e) provides the military judge with two remedies for the government's failure to deliver a "statement": (1) "order that the testimony of the witness be disregarded by the trier of fact" or (2) "declare a mistrial if required in the interest of justice." However, when, as here, the military judge errs in denying a R.C.M. 914 motion, we must determine whether this error prejudiced Appellant. *See* Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2018).

"[W]e test for prejudice based on the nature of the right violated." *United States v. Tovarchavez*, 78 M.J. 458, 465 (C.A.A.F. 2019). The standard of review and allocation of burdens depends on whether the defect amounts to a constitutional error or nonconstitutional error. Generally, a Jencks Act violation will not rise to a constitutional level. *Augenblick*, 393 U.S. at 356. This principle is not absolute, however, as, "[i]t may be that in some situations, denial of production of a Jencks Act type of a statement might be a denial of a Sixth Amendment right." *Id*. Thus, "the failure to provide material to which the defendant is entitled under the Jencks Act may adversely affect a defendant's ability to cross-examine government witnesses and thereby infringe upon his constitutional right of confrontation." *Krilich v. United States*, 502 F.2d 680, 682 (7th Cir. 1974). Here, however, Appellant was the subject of the interrogation, and therefore was aware of the tone and general content of the agents' comments. Furthermore, the agents were subject to cross-examination. Therefore, we conclude that Appellant was not denied his right of confrontation. Under the facts of this case, the R.C.M. 914 error infringed a procedural right rather than a fundamental constitutional right.[2] Therefore, we test this nonconstitutional error for prejudice under Article 59(a), UCMJ.

---

[2] We also conclude that the R.C.M. 914 violation in this case does not violate any other constitutional rights.

"For [preserved] nonconstitutional evidentiary errors, the test for prejudice is whether the error had a substantial influence on the findings." *United States v. Kohlbek*, 78 M.J. 326, 333 (C.A.A.F. 2019) (citation omitted) (internal quotation marks omitted). "In conducting the prejudice analysis, this Court weighs: (1) the strength of the Government's case, (2) the strength of the defense case, (3) the materiality of the evidence in question, and (4) the quality of the evidence in question." *Id.* (citations omitted) (internal quotation marks omitted).

Although our review for prejudice is de novo, we agree with the lower court's well-reasoned analysis of the above factors. The record contains sufficient evidence for us to conclude, as did the lower court, that despite the erroneous admission of the agents' testimony, Appellant was not prejudiced. Apparently, during oral argument before the lower court, appellate defense counsel conceded that the R.C.M. 914 motion was limited to the comments on the lost Disc 4. *Clark*, 2019 CCA LEXIS 247, at *14, 2019 WL 2455504, at *5. Admissions Appellant made during other portions of his interview were damning. He admitted during portions of the interview contained on Discs 1, 2, 3, and 5 to committing various sexual acts against AC. *Id.* at *14, 2019 WL 2455504, at *5. Also, Appellant agreed in his trial testimony to telling the agents that he had penetrated AC's vagina with his penis. *Id.* at *14, 2019 WL 2455504, at *5. The record also contains evidence that both Appellant and AC had HSV-2 genital herpes. *Id.* at *14, 2019 WL 2455504, at *5. Finally, the medical expert testified that HSV-2 is transmitted by "direct contact in the form of mucosa of the mouth, of the genital tract, of the anus …. [I]t has to be direct contact either oral-genital, [or] genital-genital…."

Additionally, in *Rosenberg v. United States*, 360 U.S. 367, 371 (1959), the Supreme Court noted that a failure to produce may be held harmless if the defense otherwise had access to the same information:

> An appellate court should not confidently guess what defendant's attorney might have found useful for impeachment purposes in withheld documents to which the defense is entitled. However, when the very same information was possessed by defendant's counsel as would have been available were error not committed, it would offend common sense and the fair administration of justice to order a new trial.

> There is such a thing as harmless error and this
> clearly was such.

While the defense may not have had the "very same information" that would have been available if the disc was not lost, as Appellant could not be expected to remember the interview verbatim, Appellant's participation in the interrogation gave trial defense counsel sufficient information to cross-examine the agents. Moreover, Appellant chose to testify and had the opportunity to explain to the panel the manner in which the agents conducted the interrogation. Accordingly, the military judge's error did not have a substantial influence on the findings.

## Judgment

The decision of the United States Army Court of Criminal Appeals is affirmed.