UNITED STATES, Appellee

v

ROBERT G. MOELLER, Private First Class, U. S. Marine Corps, Appellant

8 USCMA 275, 24 CMR 85

No. 9796

Decided September 27, 1957

Lieutenant (jg) W. W. McNeilly, Jr., USNR, was on the brief for Appellant, Accused.

Lieutenant Colonel Charles H. Beale, Jr., USMC, and Commander Guilbert W. Martin, USN, were on the brief for Appellee, United States.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was ordered tried before a special court-martial and found guilty of the commission of five separate offenses. Three of the crimes were violations of Article 92 of the Uniform Code of Military Justice, 10 USC § 892, and grew out of failures to obey regulations or orders. The other two offenses were alleged as crimes proscribed by Article 121 of the Code, 10 USC § 921, and arose out of the theft of personal property belonging to other members of the Marine Corps. He was sentenced to be discharged from the service with a bad-conduct discharge, to be confined at hard labor for a period of six months, and to be reduced to the grade of private. Intervening reviewing authorities affirmed the findings and sentence, and we granted his petition for review to consider irregularities occurring during the trial of his case.

There were three irregularities which we concluded might have denied the accused a fair trial. The first arose out of the unusual situation that the sergeant who swore to the charges and thus became the statutory accuser was subsequently detailed as reporter to the court-martial. The second anomaly touches closely on the first, for the reporter was called into the secret chambers of the court-martial while it was deliberating on the sentence, and he became the fountain head of law on the sentence. The last improper act on the part of the reporter was his failure to make a record of the proceedings during the closed conference session.

II

There are in military law accusers who have actually been injured by accused's misconduct. In addition, there are statutory accusers who are designated as such because they swear to the charges. Both have been cast in a character role which, on the surface, is hostile to that of being a reporter. When explored to depth, the assignment of one belonging to the first class is adverse to good administration for, certainly, if a reporter has been harmed by a criminal act of an accused, he may be placed in a position which subjects him to some temptation if he is required to report the proceedings. We do not believe it necessary or proper to place an individual in an assignment where redress for his grievances may depend upon the accurate recording of testimony and the transcription of his notes. True it is, as Government contends, that other officials have the duty of seeing that a record contains all the testimony developed in the trial of a case. But it is to be remembered that a great mass of evidence may be placed

276

in a record, and it is impossible for anyone but the reporter to record accurately all of the testimony. We, therefore, conclude that it is contrary to the concept of a fair trial and an adequate review to have an actual accuser assigned as reporter. Likewise, as a general proposition, statutory, or what we shall designate as nominal, accusers should not be detailed as reporters. The potentialities for harm to the system are great if one who appears on the record as an accuser can be a key party to the preservation of the rights of an accused. In many instances, it is impossible on appeal to ascertain the true status without some sort of hearing, and post-trial hearings are not desirable. We do not believe, even in the case of small posts, that personnel shortage is so great that a person qualified to record the proceedings need be selected to sign the charge sheet. We, therefore, believe it erroneous to combine the two assignments.

### III

There is no statutory authority for a reporter to be legal adviser to a special court-martial, and he is ██ forbidden to enter the chambers where secret deliberations are being conducted. In a general court-martial case, he is authorized to accompany the law officer to record the proceedings when the former is permitted by the Code to assist the court-martial members in putting the findings into proper order. There is, however, no authority for any person other than court members to be present during the deliberations on the sentence. The net effect of the unusual proceedings in this case is that a reporter participated in the secret deliberations of the court-martial, and counsel for the Government, with commendatory candor, concede that our previous decisions compel a reversal for that type or error.

### IV

The third irregularity is likewise sufficiently prejudicial to ██ require a reversal of the sentence. Article 39 of the Uniform Code of Military Justice, 10 USC § 839, provides that after a general court-martial has finally voted on the findings, the court may request the law officer and the reporter to appear before the court to put the findings in proper form. It then goes on to state that such proceedings shall be on record. The president of a special court-martial is the equivalent of the law officer of a general court, and assuming arguendo that the reporter had the right to appear before the members of the special court-martial, at their request, he had the duty to record the proceedings that occurred during his presence. The record is silent about the events and conversations which occurred at that time and, therefore, it is not complete. The provisions of Article 19, Uniform Code of Military Justice, 10 USC § 819, state that a bad-conduct discharge shall not be adjudged unless a complete record of the proceedings has been made. It was, therefore, error for the court-martial to include that form of punishment in its sentence.

### V

While, as stated originally, the last two irregularities go merely to sentence, the appointment of an accuser as a reporter affects the proceedings as a whole. We are assured that in this instance that functionary had no personal interest in the outcome of the case, and we are willing to accept that assurance. However, the nature of the irregularity is such as to give us grave concern and it is of sufficient moment to cause us to believe the findings and sentence should be set aside. It is so ordered, and the record is returned to The Judge Advocate General of the Navy for reference to a board of review for action not inconsistent with this opinion.

Judge FERGUSON concurs.

QUINN, Chief Judge (concurring):

I concur with the principal opinion in regard to the first two errors. However, I disagree with the ██ discussion in Part IV. In my opinion, consideration of Article 19 of the Uniform Code is unnecessary. The issue is one regarding an unauthorized interchange be-

tween the court members and the reporter. In such a situation, the presumption is that the unauthorized communication is prejudicial to the accused. United States v Adamiak, 4 USCMA 412, 15 CMR 412.