**UNITED STATES**

v.

**Douglas A. McGEE, 273 70 1383, Private First Class (E–2), U. S. Marine Corps.**

**NMCM 81 2648.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 19 Feb. 1981.

Decided 20 April 1982.

LCDR William A. DeCicco, JAGC, USN, Appellate Defense Counsel.

MAJ Charles Wm. Dorman, USMC, Appellate Government Counsel.

En Banc.

BYRNE, Judge:

Private First Class McGee was found guilty, pursuant to his pleas, of one specification of unauthorized absence, of over 15 months, in violation of Article 86 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. During presentencing the appellant, in effect, requested he be awarded a bad-conduct discharge. The military judge sentenced the appellant to be reduced to pay grade E–1, to forfeit $100.00 per month for 2 months, to be confined at hard labor for 2 months, and to be discharged from the United States Marine Corps with a bad-conduct discharge. Both the convening authority and supervisory authority approved the sentence. The accused requested that he not be represented by appellate defense counsel.

## A.

### The Issue

The issue in this case is: does the fact that the court reporter is a nominal accuser *automatically* mandate that the findings and sentence be disapproved and the case reversed? We hold that it does not. We do so on the basis of waiver, but conclude that, in any event, there was no prejudice. We reaffirm *United States v. Gloria*, 12 M.J. 518 (N.M.C.M.R.1981) and reject the holding in *United States v. Moffett*, No. 81 1694 (N.M.C.M.R. 24 June 1981).

## B.

### The Facts

The court reporter, Staff Sergeant Ulrich, executed the following sworn affidavit:

I, Staff Sergeant Philip G. ULRICH 568 62 1165 U.S. Marine Corps, being duly sworn, depose and state that I have been a member of Headquarters and Headquarters Squadron, Marine Corps Air Station, El Toro since August 12, 1978, and was assigned to duties as Military Justice Chief for the Joint Law Center, Marine Corps Air Station, El Toro on 1 August 1980 and held this billet until 5 February 1981. As Military Justice Chief, I routinely made out an index card upon receipt of a request for legal services from a unit commander. I then read all investigative reports accompanying the request and drafted the appropriate charges based on the information contained in these reports. After the charges were typed, I proofread the entire document. I was sworn and signed the charge sheet on page three, as the nominal statutory accusor [sic]. The original charge sheet and the convening order were then forwarded to the unit for referral. Upon return of the signed charge sheet and convening order, from the unit, I distributed copies to the counsels and judge assigned to the case.

With regard to the processing of Private First Class MCGEE's case, for trial, I did not deviate from any of the established standard operating procedures for the handling of cases within the Military Justice Section of the Law Center. The request for legal services was received on 23 January 1981 from the commanding officer of Wing Transportation Squadron 37, Marine Wing Support Group 37, 3d Marine Aircraft Wing, Fleet Marine Force, Pacific. The facts upon which I relied to draft the charges were obtained solely from the information contained in the Request for Legal Services. Furthermore, I never had any personal contact with Private First Class MCGEE, nor did I have any actual knowledge of the circumstances surrounding the particular offense alleged prior to drafting the charges and signing the document as the accusor [sic] in this case.

In February 1981, both of the Law Center stenographers were transferred from this facility, which resulted in a critical shortage of trained personnel within the Court Reporters Section. Consequently, I was reassigned to work in the Reporters Section based on my former training and experience as a closed microphone reporter. On 19 February 1981, I was detailed as the court reporter in the above case. This assignment was effected on a random basis and I acted

strictly as a functionary throughout the proceedings. I had absolutely no personal interest in the outcome of this case.

Sergeant Ulrich signed page 3 of the charge sheet as accuser. He was introduced as reporter and later identified as the accuser during the trial.

The trial defense counsel made no objection to Sergeant Ulrich's performance of these dual roles.

Sergeant Ulrich was a statutory (nominal) accuser, in that he did swear to the charges, but he was not an "actual" accuser as he had not "actually been injured by accused's misconduct." *United States v. Moeller*, 8 U.S.C.M.A. 275, 276, 24 C.M.R. 85, 86 (1957).

## C.

### Moeller Revisited

The contrast between the facts of this case and *United States v. Moeller, supra,* is striking. The only real parallel between *Moeller* and this case is that both nominal accusers served also as court reporters. But, in *Moeller*, a contested case, the court reporter was much *more* than a nominal accuser, the legal qualifications of counsel and the presiding officer were significantly different, and the nature and conduct of the proceedings took a turn in *Moeller* that was bizarre even in its day.

We know that, in *Moeller*, the trial defense counsel was, in his own words, "inexperienced". *United States v. Gloria, supra,* at, n.2. Neither the trial counsel or the defense counsel was a military lawyer. We also are confident that the president was not a military lawyer. Further, twenty-five years ago military judges were not assigned as such to preside at special courts-

martial; the senior member, as president, presided.[1]

■ In *Moeller*, after the presentencing and while the members were deliberating on the sentence, a very unusual conversation took place. A Marine sergeant, the trial counsel, the defense counsel, *the accused*, and the court reporter were discussing the case. Either the trial counsel *or* the reporter suggested the accused "would probably" get the maximum sentence. *Thereafter*, the court reporter was asked to come into the members' secret deliberations, and, with the consent of both counsel to enter, proceeded to *instruct* the members on the sentence, and *instruct* them as to the naval service policy that an individual should be reduced to the lowest enlisted pay grade if the court imposed a punitive discharge.[2] The court reporter then failed to perform his principal responsibility: he omitted to record the unauthorized conversation.

Consequently, it is no wonder that the United States Court of Military Appeals would reverse *both* the findings and sentence. In the Court's words, the court reporter had become the "fountain head of law on the sentence." *Moeller, supra* at 276, 24 C.M.R. at 86. But with an inexperienced nonlawyer defense counsel and a president who allowed a court reporter to usurp his responsibilities, and a court reporter who omitted to record his own transgressions, the court could not know, in this *contested* case, what *other* prejudicial errors occurred that the court reporter did not transcribe faithfully. Under such circumstances, the United States Court of Military Appeals apparently felt compelled to reverse not only the sentence, but the findings.[3]

---

1. *Compare* present Articles 26 and 27, Uniform Code of Military Justice, 10 U.S.C. §§ 826 and 827, with their predecessors.

2. Instructing members of such departmental policies is prejudicial error. *See United States v. Choate,* 9 U.S.C.M.A. 680, 26 C.M.R. 460 (1958). *Cf., United States v. Fowle,* 7 U.S.C.M.A. 349, 22 C.M.R. 139 (1956).

3. *United States v. Tucker,* 9 U.S.C.M.A. 587, 26 C.M.R. 367 (1958), another special court-martial in which there were "numerous inherently and specifically prejudicial errors" in addition to the fact that the accuser served as reporter, appears to be cut from the same factual cloth as *United States v. Moeller,* 8 U.S.C.M.A. 275, 24 C.M.R. 85 (1957). It reaffirms the historical and factual context within which *Moeller* developed.

Paragraph 7 of the *Manual for Courts-Martial, 1969 (Rev.)* (MCM), now states that "no person may act as reporter . . . in any case in which he is an accuser." *United States v. Moeller, supra,* is the source for this statement. *Analysis of Contents, MCM,* DA Pam. 27–2, p. 3–2 (1970).

### D.

### Discussion

In deciding *United States v. Moeller, supra,* the United States Court of Military Appeals was adhering to Jerome Frank's advice that to "give too much attention to the future is to ignore the problem which is demanding solution today." J. Frank, *Law and the Modern Mind* 154 (1936). However, the Court did not condemn the system to an inflexible rule of *per se* reversal because of the malfeasance of one court reporter, and the misfeasance of an inexperienced trial counsel and unknowledgeable court-martial president.

■ The Court said, in effect, that it was reversing the findings and sentence because, in this case, "the nature of the irregularity is such as to give us grave concern and it is of sufficient moment to cause us to believe the findings and sentence should be set aside." *United States v. Moeller, supra* at 277, 24 C.M.R. at 87. *But,* the Court delineated a difference between an *actual* accuser and a *nominal* accuser:

We, therefore, conclude that it is contrary to the concept of a fair trial and an adequate review to have an actual accuser assigned as reporter. Likewise, as a general proposition, statutory, or what we shall designate as nominal, accusers *should* not be detailed as reporters. (Emphasis supplied.)

By that statement, the Court said it would apply an automatic reversal rule if an actual accuser were assigned as reporter, but if a nominal accuser serves as reporter no *per se* reversal rule will be applied. The Court was, by this demarcation, in the past, avoiding the adverse consequences of *"overlooking . . . the distinctive novelties of the present."* *Law and the Modern Mind, supra* at 154–55.[4]

The "present" has now arrived. The practical facts of life are that new courses have been set for the military justice system in the 25 years since *Moeller* was decided. Military lawyers now serve as trial and defense counsel, and military judges sit in special courts-martial.

### E.

### Waiver

■ We hold that although there was error in noncompliance with paragraph 7 of the MCM and *United States v. Moeller, supra,* there was a waiver by a failure on the part of the defense to object at trial. Military case law, federal practice, and the provisions of the MCM support this conclusion.

The defense had notice of Sergeant Ulrich's dual role. A copy of the charge sheet had been provided and Sergeant Ulrich had been identified as the statutory accuser on page 3 therein. During the trial he was specifically identified as the court reporter and shortly thereafter identified as the statutory accuser. No objection or comment was made by the trial defense counsel.[5]

4. A majority of the judges who decided *United States v. Moeller, supra,* have affirmed this conclusion. *See* Judge Quinn's comments in *United States v. Payne, supra,* at 462, and Judge Latimer's comments, in dissent, in *United States v. Martinez,* 11 U.S.C.M.A. 224, 232, 29 C.M.R. 40, 48 (1960).

5. The doctrine of waiver was not considered in *United States v. Moeller, supra,* because the trial defense counsel was not a military lawyer. *See United States v. Gloria,* 12 M.J. 518, n.2 (N.M.C.M.R.1981); Judge Latimer's comment,

in dissent, discussing his majority opinion in *Moeller* in *United States v. Martinez, supra.* The principles of waiver were rarely applied at a special court-martial when an accused was not represented by a lawyer. *See, e.g., United States v. Martinez, supra,* at 232 (Latimer, Judge, dissenting); *United States v. Zemartis,* 10 U.S.C.M.A. 353, 27 C.M.R. 427 (1959); and *United States v. Moore,* 4 U.S.C.M.A. 675, 6 C.M.R. 249 (1954). The waiver doctrine was also suspect when the presiding officer was not

Since the Military Justice Act of 1968 became effective, the participation of detailed defense counsel who are *not* military lawyers and the use of the president as presiding officer in special courts-martial have been virtually nonexistent.[6] Court-martial procedural requirements since 1968 have also been expanded by the military appellate courts.[7] The assumption has been that a military judge will preside and the defense counsel representing the accused will be a military lawyer. But, by creating by case law and by amendments to the MCM a more complicated system, the military appellate courts must place trust and confidence in military lawyers by assuming they will perform their duties properly.[8]

Otherwise, trial by court-martial will develop into a game-like rite in which the focus of the trial shifts from the determination of guilt, the nature of the crime, and its victims to construction of a procedural mosaic in which trial preparation and trial skills become secondary. Such "game playing" enhances the possibility that, *as in this case*, a counsel for an accused can achieve every practical goal for his client envisioned prior to trial, and by not asserting rights that are irrelevant to his objectives, obtain a complete reversal of the findings and sentence on appeal.[9] The practical result is usually no retrial of the case. The appellant has the potential opportunity of obtaining a discharge, other than a bad-conduct discharge, based upon a procedural error of no practical consequence to his trial objectives.

The Rules of Criminal Procedure for the United States District Courts *require* the following matters be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution; or

(2) Defenses and objections based on defects in the indictment or information....[10]

Two of these objections which must either be raised at trial or waived are the absence of the handwritten signature of the United States Attorney on an indictment and the absence of the signature of an authorized individual on an information. *Wiltsey v. United States*, 222 F.2d 600 (4th Cir. 1955); *McGrew v. United States*, 281 F. 809 (9th Cir. 1922). *See also* L. Orfield, 1 Criminal Procedure Under the Federal Rules §§ 7:74, 7:88 (1966).[11] Consequently, federal practice would recognize a waiver under circumstances similar to the case at bar.

The MCM also provides for waiver by a failure to object. While paragraph 7 of the MCM *does* state an accuser may not serve as court reporter, other provisions recognize that the defense has an option of raising an objection to the nominal accuser serving as court reporter by making a motion for appropriate relief. Paragraph 67*b* of the MCM, discussing motions for appropriate relief, states:

Failure to raise any such objection prior to plea or prior to the conclusion of any Article 39(a) session held prior to assembly, which ever occurs earlier, constitutes a waiver thereof....

Consequently, the MCM, when its provisions are read together, specifically leaves the significance to be placed upon such matters with the trial defense counsel. When an

---

trained in the law. *See, e.g., United States v. Hatter*, 8 U.S.C.M.A. 186, 23 C.M.R. 410 (1957).

6. *Cf.*, note 1, *supra*.

7. *See e.g., generally*, Cooke, *The United States Court of Military Appeals, 1975–1977: Judicializing the Military Justice System*, 76 Mil.L.Rev. 43 (1977).

8. *See, e.g.*, Mil.R.Evid., 103(a), (d), 304(d)(2)(A), 311(d)(2)(A) and 321(c)(2)(A).

9. Wasinger, *The Doctrine of Waiver*, 39 Mil.L. Rev. 85, 118 (1968).

10. Fed.R.Crim.P. 12(b)(1) and (2).

11. The federal information is supported only by the general oath of the United States Attorney to faithfully perform the duties of his office. *Albrecht v. United States*, 273 U.S. 1, 47 S.Ct. 250, 71 L.Ed. 505 (1926). The military's equivalent of the federal information is the preferral and referral of charges. *See generally* Murphy, *The Formal Pretrial Investigation*, 12 Mil.L.Rev. 1 (1961); *United States v. Allen*, 5 U.S.C.M.A. 626, 640, 18 C.M.R. 250, 264 (1955).

affirmative waiver is required from the accused, the MCM specifically provides for one. *See, e.g.,* paragraph 68c, MCM. If the defense had raised the issue at trial, the matter could have been resolved. *See, e.g., United States v. Wilson,* 6 M.J. 214, 215 (C.M.A.1979).[12]

The record of trial affirms the trial defense counsel protected his client's interests at every stage of the trial. It also shows there was no denial of a fair trial, a lack of due process, or a manifest miscarriage of justice.

There was waiver.

### F.

#### No Prejudice

■ The situation in this case also falls within the spirit of a rhetorical observation by the United States Court of Military Appeals in *United States v. Mickel,* 9 U.S.C.M.A. 324, 327, 26 C.M.R. 104, 107 (1958):

In the absence of any possibility of harm, what reason justifies reversal of the accused's conviction?

In this case, as we have already discussed, the accused obtained every legitimate objective he could expect from his trial. He wanted out of the service and believed that a bad-conduct discharge was the only way: he got it. He wanted a minimization of forfeitures and confinement at hard labor: he got it. He even specifically requested that he not be represented by appellate defense counsel on his appeal.

*United States v. Moeller, supra,* and *United States v. Tucker,* 9 U.S.C.M.A. 587, 26 C.M.R. 367 (1958), were cases in which the prejudice was apparent. We believe we would *not* be adhering to precedent by reversing the findings and sentence in this case, in which there is no prejudice (as well

as waiver). We believe Jerome Frank was correct when he observed:

You are not really applying ... [a judge's] decision as a precedent in another case unless you can say, in effect, that, having relived his experience in the earlier case, you believe that he would have thought his decision applicable to the facts of the latter case.[13]

If *Moeller* and its progeny are construed to cast a shadow much wider than proper adherence to precedent requires, the military justice system will have to pay too high a price for the fact that one court reporter, two-and-one-half decades ago, chose to orchestrate a special court-martial with a radically different procedure and participants than we have today.

The findings of guilty and sentence, as approved on review below, are affirmed.

Senior Judges SANDERS and ABERNATHY, and Judges BOHLEN, KERCHEVAL, and GORMLEY concur.

GLADIS, Senior Judge (dissenting):

I dissent because the majority's conclusion that reversal is not required where the accuser was the court reporter is contrary to the holding of the U.S. Court of Military Appeals in *United States v. Moeller,* 8 U.S. C.M.A. 275, 24 C.M.R. 85 (1957). *See* my dissent in *United States v. Gloria,* 12 M.J. 518 (N.M.C.M.R.1981).

In *Moeller,* the Court held that assignment of a nominal accuser as reporter is an error of sufficient moment to warrant reversal of the findings and sentence. In *United States v. Martinez,* 11 U.S.C.M.A. 224, 29 C.M.R. 40 (1960), the Court reiterated its holding in *Moeller* and, rejecting the doctrine of waiver, applied the holding in an analogous situation, even though the

---

12. The MCM also states that an accused may even be tried on *unsworn* charges, unless he objects. Paragraph 29e, MCM, 1969 (Rev.). Consequently, if Sergeant Ulrich had *failed* to perform his duty of swearing to appropriate charges in Private First Class McGee's case, there would have been a waiver by failure to object. *See United States v. Taylor,* 15 U.S.C. M.A. 565, 36 C.M.R. 63 (1965). Further, a

failure to object to trial on charges sworn to before an officer not qualified to administer an oath, while error, is waived absent a timely objection. *United States v. May,* 1 U.S.C.M.A. 174, 2 C.M.R. 80 (1952).

13. J. Frank, *Law and the Modern Mind* 150 (1936).

accused had been represented by lawyer counsel who did not object at trial.[1]

The majority attempts to distinguish *Moeller* on the ground that the Court found other irregularities in the activities of the reporter than merely the fact that he was a nominal accuser. But the U.S. Court of Military Appeals noted that these irregularities in the sentencing procedure, standing alone, did not warrant reversal of the findings. The Court held that where the court reporter is the nominal accuser, there is an irregularity of sufficient moment to warrant reversal of the findings and sentence. *United States v. Moeller, supra* at 277, 24 C.M.R. at 87. Assuming that the reporter in this case was a nominal and not an actual accuser, the operative facts here are the same as those in *Moeller*. The majority chooses to distinguish *Moeller* on the basis of facts extraneous to the holding in that case because of its expressed dislike for a holding which it believes has outlived its usefulness. It is not, however, the function of an intermediate appellate court to overturn rules promulgated by a higher court, even if the intermediate court considers the rules to be misguided. *Hutto v. Davis,* —— U.S. ——, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam opinion); *United States v. Heflin,* 1 M.J. 131, 136, n.6 (C.M.A.1975).

Moreover, the rule enunciated in *Moeller* was subsequently prescribed by the President in paragraph 7, *Manual for Courts-Martial, 1969 (Rev.) (Manual)*, promulgated when the Military Justice Act of 1968, Pub.L. 90–632, provisions requiring a military judge and lawyer defense counsel at most special courts-martial became effective. The *Manual* does not provide for waiver of this requirement although it does of other requirements.[2] It ill-behooves this Court to disregard the rules promulgated by the President in the *Manual*.

Like the drafters of the *Manual*, I am not convinced that *Moeller* has outlived its usefulness. The Court, there, announced the policy that a nominal accuser should not be detailed as a reporter and held that violation of that policy was reversible error without a showing of prejudice. It noted that in many instances, it is impossible on appeal to ascertain the true status of the accuser without some sort of post-trial hearing. This case demonstrates the wisdom of that observation. The Government, here, resorted to a post-trial affidavit in its effort to show that the reporter was merely a nominal accuser. It is clear from his affidavit that the reporter was not a victim who had been injured by the accused's misconduct, but the pretrial activities of an individual who is not a victim may render him an actual accuser. *United States v. Martinez, supra.* It is well known that at some law centers the nominal accuser is involved in gathering additional evidence if the service record book entries or other evidence accompanying the request for legal services is deficient. The affidavit, here, does not indicate whether the accuser in this case customarily engaged in such activities,[3] but it does reveal that he drafted the charge. The work product of the accuser who drafts charges is the subject of scrutiny at trial, for the evidence in a not guilty plea case and the factual admissions of the accused in a guilty plea case must support those charges. An accuser who drafts charges has a natural interest in the vindication of his worksmanship.

The waiver provisions of the Federal Rules of Criminal Procedure and the *Manu-*

---

1. In *Martinez*, an officer whom the Court found to be an accuser-in-fact, although he did not prefer the charges, acted as an interpreter.

2. *Compare* paragraph 7, *Manual for Courts-Martial, 1969 (Rev.)* (MCM) (no person may act as reporter in any case in which he is an accuser) with paragraph 29e, MCM (in no case may an accuser be tried on unsworn charges over his objection).

3. I find it hard to believe that an accuser who received a report slip alleging both a short and lengthy unauthorized absence, with proper service record book entries establishing the former and defective entries purporting to support the latter, would draft a specification alleging the first absence and none alleging the second, rather than requesting proper entries to support a second specification for the lengthy absence.

*al,* cited by the majority are inapposite.[4] These deal with defects in preferral of charges and other pretrial proceedings. The irregularity, here, is not a pretrial defect, but an error which occurred at the commencement of and continued throughout the trial. Even if an error of this nature were waivable, this would not be an appropriate case to invoke waiver. There is no showing, here, that any of the parties was aware of the extent of the involvement of the accuser because it was not revealed at trial that he had drafted the charges.

The Court of Military Appeals held that as a matter of policy, it is reversible error when a nominal accuser acts as reporter, even though prejudice is not shown. By overturning this bright line rule designed to avoid appellate litigation and its attendant uncertainties, the majority is making courts-martial a guessing game although it condemns game playing. Adherence to *Moeller* is in the best interests of preservation of the integrity of the military justice system. Disregard of the higher Court's holding is a step on the road to judicial anarchy which inevitably results when lower courts refuse to follow precedent they believe to be misguided. *See Hutto v. Davis, supra.* Therefore, I dissent.

Chief Judge CEDARBURG, Senior Judge BAUM, and Judges MAY and MALONE join in this dissent.

Judge MICHAEL (not participating)