**138**

UNITED STATES, Appellee,

v.

Bobby G. YARBROUGH, Ship's Service-
man Seaman Apprentice, U. S.
Navy, Appellant.

No. 47,888.

NMCM 83 3610.

U.S. Court of Military Appeals.

May 12, 1986.

For Appellant: *Lieutenant Commander
Jeanne Carroll*, JAGC, USN, *Lieutenant
Commander William A. DeCicco*, JAGC,
USN, *Lieutenant Brian M. Madden*,
JAGC, USNR (on brief).

For Appellee: *Captain W.J. Hughes*,
JAGC, USN and *Lieutenant Michael P.
Cogswell*, JAGC, USNR (on brief); *Cap-
tain Carl H. Horst* and *Lieutenant Com-
mander John B. Holt*.

### Opinion of the Court

EVERETT, Chief Judge:

Appellant was tried by special court-mar-
tial, consisting of a military judge alone, on
three specifications of unauthorized ab-
sence, in violation of Article 86, Uniform
Code of Military Justice, 10 U.S.C. § 886.
He was convicted pursuant to his pleas;
and a sentence was adjudged of bad-con-
duct discharge, confinement and forfei-
tures of $380 pay per month for 4 months,
and reduction to pay grade E-1. The con-
vening authority approved the sentence but
suspended confinement in excess of 75
days for a period of 1 year. After further
approval by the supervisory authority, the
Court of Military Review affirmed; and we
granted review on this issue:

> WHETHER REVERSIBLE ERROR OC-
> CURRED WHEN THE ACCUSER IN
> THE CASE SUB JUDICE ALSO
> SERVED AS THE REPORTER.

I

On June 11, 1983, appellant was served
with the charges by YN3 R. L. Carswell,
who also was the accuser. Three days
later, when the case was tried, it was an-
nounced in open court that Carswell would
serve as court-reporter; and, subsequently,
it was noted in the record that he was the
accuser.

Actually, Carswell's role as "court-re-
porter" was somewhat limited. An un-
signed note by trial counsel, which was
attached to the record of trial as an allied
paper, states that "[t]he accuser, YN3
Carswell, R.L., served as the reporter to
the extent that he operated the four chan-
nel microphone system during the court-
martial proceeding. YN3 Carswell did not
participate in the actual transcription of the
record of trial." According to a case
progress record, also attached to the record

of trial, LN1 Eskridge prepared and typed the record. Neither at trial nor during the initial post-trial review did defense counsel express any objection to Carswell's dual participation in the case.

## II

In *United States v. Moeller*, 8 U.S.C. M.A. 275, 276–77, 24 C.M.R. 85, 86–87 (1957), this Court—in reversing a conviction where the accuser had been subsequently detailed as court reporter—stated:

There are in military law accusers who have actually been injured by accused's misconduct. In addition, there are statutory accusers who are designated as such because they swear to the charges. Both have been cast in a character role which, on the surface, is hostile to that of being a reporter. When explored to depth, the assignment of one belonging to the first class is adverse to good administration for, certainly, if a reporter has been harmed by a criminal act of an accused, he may be placed in a position which subjects him to some temptation if he is required to report the proceedings. We do not believe it necessary or proper to place an individual in an assignment where redress for his grievances may depend upon the accurate recording of testimony and the transcription of his notes. True it is, as Government contends, that other officials have the duty of seeing that a record contains all the testimony developed in the trial of a case. But it is to be remembered that a great mass of evidence may be placed in a record, and it is impossible for anyone but the reporter to record accurately all of the testimony. We, therefore, conclude that it is contrary to the concept of a fair trial and an adequate review to have an actual accuser assigned as reporter. Likewise, as a general proposition, statutory, or what we shall designate as nominal, accusers should not be detailed as reporters. The potentialities for harm to the system are great if one who appears on the record as an accuser can be a key party to the preservation of the rights of an accused. In many instances, it is impossible on appeal to ascertain the true status without some sort of hearing, and post-trial hearings are not desirable. We do not believe, even in the case of small posts, that personnel shortage is so great that a person qualified to record the proceedings need be selected to sign the charge sheet. We therefore believe it erroneous to combine the two assignments.

■ Subsequently, the Court took the same position with respect to the appointment of an accuser as interpreter. *United States v. Martinez*, 11 U.S.C.M.A. 224, 29 C.M.R. 40 (1960). In light of these cases, the 1969 Manual for Courts-Martial—which was in effect at the time of appellant's trial—specifically directed: "No person may act as reporter or interpreter in any case in which he is an accuser." Para. 7, Manual for Courts-Martial, United States, 1969 (Revised edition). *Accord* R.C.M. 502(e)(2)(A), Manual for Courts-Martial, United States, 1984. Thus, both the Manual and our precedents compel the conclusion that the accuser, Carswell, should not have served as reporter.

The Government contends that this error was waived by appellant. *Cf. United States v. McGee*, 13 M.J. 699 (N.M.C.M.R. 1982). We are reluctant to find waiver because it would have to be inferred from the record prepared by the very person whose participation in the trial is now questioned. Conceivably, a court reporter might omit recording any events which indicated that no waiver had occurred.

Although we reversed the conviction in *Moeller*, that remedy is unnecessary in this case. There the reporter was responsible for both recording and transcribing the testimony; and the accuracy of the record depended entirely on his notes and the manner in which he transcribed those notes into the final record. Moreover, any presumption that an authenticated record guarantees the absolute verity of trial

records[1] was overcome after the evidence showed that the reporter not only had wrongfully accompanied the court members into the deliberation room but also had failed to record any of the proceedings during this closed session conference.

■ On the other hand, even though Carswell, the accuser here, had been announced at trial as the reporter, he only operated the microphone system; and a different person performed many of a reporter's normal duties—namely, transcribing the proceedings and preparing the record. Many courts—such as the Superior Court of the District of Columbia—use multi-track recording systems in recording trial proceedings. From our acquaintance with such systems, we are convinced that an operator has little opportunity to distort materially the recording of proceedings and that, if Carswell had attempted to do so, this would have been readily detected. Also, we note that Yarbrough pleaded guilty to offenses readily proved by documentary evidence; the record was authenticated as accurate by the judge; and the defense has never raised any question as to the accuracy or completeness of the record.

Under these circumstances, the possibility of prejudice and the appearance of evil are too minimal to warrant awarding appellant the windfall of a reversal. Art. 59(a), UCMJ, 10 U.S.C. § 859(a). However, our ruling should not be interpreted as a retreat from the position taken by this Court almost three decades ago "that personnel shortage" in the armed services is nowhere "so great that a person qualified to record the proceedings need be selected to sign the charge sheet." Indeed, "[a]ny person subject to the code may prefer charges," see para. 29*b*, 1969 Manual, *supra,* so we can only conclude that the procedures used in this case and two other cases recently reviewed by the Court of Military Review[2] display carelessness and lack of concern for the importance of courts-martial. Such attitudes do not promote respect for military justice and should be avoided.

### III

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge COX concurs.

1. *See United States v. Credit,* 4 M.J. 118 (C.M.A. 1977); *United States v. Galloway,* 2 U.S.C.M.A. 433, 9 C.M.R. 63 (1953).

2. *See United States v. McGee,* 13 M.J. 699 (N.M. C.M.R.1982) (en banc) (6–5); *United States v.*

*Gloria,* 12 M.J. 518 (N.M.C.M.R.1981). Judge Gladis dissented in both cases.